Gerald G. MARTIN and Keith Niemann, Plaintiffs-Appellants,

v.

Robert H. PLATT, Alfred di Scipio, and the Magnavox Company, Defendants-Appellees.

No. 3–1076A252.

Court of Appeals of Indiana, Third District.

March 26, 1979.

Martin T. Fletcher, Rothberg, Gallmeyer, Fruechtenicht & Logan, Fort Wayne, for plaintiffs-appellants.

J. Michael O'Hara and William L. Sweet, Jr., Barrett, Barrett & McNagny, Fort Wayne, for defendants-appellees.

GARRARD, Presiding Judge.

Gerald Martin and Keith Niemann (employees) brought this action against their former employer, the Magnavox Company (Magnavox) claiming retaliatory discharge.

Joined as individual defendants were Alfred di Scipio and Robert Platt (officers) who were the vice president and president of Magnavox. The claim against the officers alleged tortious interference with the employment relationship between Magnavox and the employees. Magnavox and the officers moved for summary judgment. The court found that there were no genuine issues of any material fact as to the non-liability of all defendants and that they were entitled to judgment as a matter of law. Judgment was entered against the employees and they appeal.

Of course, the burden in the trial court was upon the proponents of the motion, and any genuine disputes concerning the existence of material issues of fact are to be resolved in favor of the non-moving party. *Podgorny v. Great Central Insurance Co.* (1974), 160 Ind.App. 244, 311 N.E.2d 640. Thus, for the purposes of this appeal the issue becomes whether the appellees were entitled to judgment as a matter of law, assuming the truth of the facts as alleged by the employees wherever the facts appear to be in dispute.

The record reveals the following background. The employees were executives with Magnavox. di Scipio was their immediate superior, and Platt was di Scipio's superior. Both employees were employees at will. In 1974 they reported to Platt information that di Scipio was soliciting and receiving "kickback" payments from Magnavox suppliers.[1] After Magnavox investigated the charges, no action was taken against the officers. However, the employees were discharged.

The employees maintain that the officers intentionally and maliciously caused Magnavox to discharge them in retaliation for truthfully reporting the kickbacks and to suppress the information they had obtained.

### I. Interference with Business Relationship

The employees contend they have a claim against the officers individually on the ground that they tortiously interfered in the employment relation between the employees and Magnavox.

Indiana has long recognized that an action will lie for an unjustifiable interference with the contractual and prospectively advantageous business relationship one enjoys with another. *Daly v. Nau* (1975), Ind.App., 339 N.E.2d 71; *Kiyose v. Trustees of Indiana University* (1975), Ind.App., 333 N.E.2d 886; *Fort Wayne Cleaners & Dyers Assoc., Inc. v. Price* (1956), 127 Ind.App. 13, 137 N.E.2d 738.

However, such an action involves the intervention of a third party. *Geary v. United States Steel Corp.* (1974), 456 Pa. 171, 319 A.2d 174. It will not lie against a party to the contract. *Daly, supra; Kiyose, supra* ; Prosser, *Torts*, § 129 (4th Ed. 1971). In addition, an officer or director of a corporation will not be held independently personally liable for inducing the corporation's breach of its contract, if the officer or director's action is within the scope of his official duties on behalf of the corporation. *Daly, supra; Kiyose, supra. See also H. F. Philipsborn & Co. v. Suson* (1974), 59 Ill.2d 465, 322 N.E.2d 45; *Widger v. Central School Dist. No. 1* (1964), 20 A.D.2d 296, 247 N.Y.S.2d 364.

In the present case it is undisputed that Platt and di Scipio were the supervisors of Martin and Niemann. It is uncontroverted that the decision to hire and fire executive level employees at Magnavox rested with the employee's immediate superior. The discharges were within the scope of the duties of Platt and di Scipio, and no action will lie against them on the theory of interference with a contractual relationship. The trial court correctly held the officers were entitled to judgment as a matter of law.

### II. Retaliatory Discharge

The employees also contend that they had a cognizable legal claim that their

---

1. These allegations were, of course, disputed, but we must assume them to be true for purposes of reviewing the propriety of terminating the case by summary judgment. The defendants maintained the charges were false and that the discharges were motivated by the employees' inability to get along with corporate officials, insubordination and poor performance.

employment was terminated in retaliation for their truthful reporting of di Scipio's improper activities. The issue we face is whether an employee at will can maintain an action for retaliatory discharge.

The general rule and great weight of authority is that where the duration of the employment cannot be determined from the terms of the contract, the contract is at will and either party may terminate it with or without cause at any time in the absence of contractual limitations. *Pearson v. Youngstown Sheet & Tube Co.* (7th Cir. 1964), 332 F.2d 439; *Speeder Cycle Co. v. Teeter* (1897), 18 Ind.App. 474, 48 N.E. 595.

An exception exists, of course, where an applicable statute prohibits discharge for a specified reason. *See, e. g., Phelps Dodge Corp. v. N.L.R.B.* (1941), 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271, 133 A.L.R. 1217.

In *Frampton v. Central Ind. Gas Co.* (1973), 260 Ind. 249, 297 N.E.2d 425 our Supreme Court found that such a discharge would be precluded where the reason was to punish the employee and dissuade other employees from claiming Workmen's Compensation benefits. The court termed such a discharge a "device" within the meaning of IC 22–3–2–15 prohibiting employers from avoiding their obligations under the Workmen's Compensation Act.

A few cases have extended the prohibition to situations where the employee was discharged for complying with a statutory duty. *See Nees v. Hocks* (1975), 272 Or. 210, 536 P.2d 512 (performing jury service); *Petermann v. Int'l. Bro. of Teamsters* (1959), 174 Cal.App.2d 184, 344 P.2d 25 (refusing to commit perjury).

Two cases have considered the issue on broad public policy grounds. In *Geary v. United States Steel Corp.* (1974), 456 Pa. 171, 319 A.2d 174 the Pennsylvania Supreme Court in a divided opinion refused to permit an action for retaliatory discharge by a former at-will employee who asserted he had been discharged for giving warnings concerning a company product he considered dangerous. Justice Roberts, dissenting, urged recognition of the social and economic desirability of enabling unorganized employees to rely upon a reasonable expectation of continued employment.

The same year in *Monge v. Beebe Rubber Co.* (1974), 114 N.H. 130, 316 A.2d 549, the New Hampshire Supreme Court, with Justice Grimes dissenting, affirmed the right to such an action upon the ground of general public policy where a female employee alleged the reason for her discharge was her refusal to date her foreman.

Both decisions discuss the historical evolution of the concept of employment at will. We need not do so here. Nor do we dispute the lack of utility in an employer discharging a faithful capable employee without reason.

The parties do not suggest, however, that it is our proper present function to outlaw employment contracts at will. The employees urge only that we declare unlawful a discharge under such a contract where the reason for the discharge is contrary to general public policy. Normally, of course, the determination of what constitutes public policy, or which of competing public policies should be given precedence, is a function of the legislature.

Even if we were to exercise our power in this regard, what would be the measure of actual damages? If the employment could be truly terminated at any time for no reason at all, how would one carry the burden of proving more than nominal damages? It appears to us that the practical remedy would come, then, from recovering punitive damages. Such damages are allowable for reasons of public policy. We would thus create an action based upon an undeclared public policy where the measure of damages was governed only by the same source. We decline the opportunity to do so. Such broad determinations should be left for the legislature.

The summary judgments are affirmed.

HOFFMAN and STATON, JJ., concur.