James T. CAMPBELL, Appellant
(Plaintiff below),

v.

ELI LILLY & COMPANY, Appellee
(Defendant below).

No. 2–580A151.

Supreme Court of Indiana.

June 12, 1981.

Bruner & Frische, Indianapolis, Alan B. Morrison, Washington, D. C., for appellant.

Stephen W. Terry, Jr. and John W. Purcell, Baker & Daniels, Indianapolis, for appellee.

[For opinion of Court of Appeals see 413 N.E.2d 1054.]

## ON PETITION TO TRANSFER

HUNTER, Justice, dissenting to denial of transfer.

I must respectfully dissent from this Court's refusal to grant Campbell's petition for transfer, wherein he sought review of the Court of Appeals' opinion in *Campbell v. Eli Lilly & Co.*, (1980) Ind.App., 413 N.E.2d 1054 (Ratliff, J., dissenting in part). There, solely on the basis of the common law employment at will doctrine,[1] the court upheld the summary judgment entered on Campbell's suit, which was based on his alleged retaliatory dismissal. Specifically, Campbell charged in his complaint that defendant fired him for reporting to his superiors the dangerous and lethal effects of various company-manufactured drugs (Apridine, Darvon, and Monensin) which were undergoing research in defendant's laboratories.

Unlike the Court of Appeals, I would hold that these allegations state a claim upon

---

1. I note that Judge Ratliff, who dissented from the majority's invocation of the employment at will doctrine, nevertheless concurred in result on the basis that Campbell's allegations were refuted by defendant's affidavit and left unsupported by any factual foundation. Although this alternative basis was not adopted by the majority of the Court, it warrants discussion.

Plaintiff made various *specific* factual allegations against defendant, whose· affidavit read: "Lilly caused said allegations to be investigated and concluded to its satisfaction that such allegations were totally unfounded and false." Defendant's opinion is in reality a self-serving general denial and did not rebut each and every specific allegation of wrongful acts; Campbell was not required to submit additional factual issues in order to withstand summary judgment, for genuine issues of material fact yet existed. Ind.R.Tr.P. 56(c); *Layman v. Atwood*, (1977) Ind.App., 370 N.E.2d 933.

which relief could be granted. In so ruling, I would recognize an exception to the employment at will doctrine based on public policy; that exception would embrace circumstances wherein, as here, a vital interest of the state as defined by statute or common law would clearly be defeated were the discharged employee denied a cause of action.

Rarely in the law do we confront such compelling circumstances for the re-examination of an existing legal principle. Long the rule in Indiana, the employment at will doctrine simply means that employment contracts for an unspecified period of time have been recognized in law as terminable at the will of either employer or employee, with or without cause. Here, the rule operates to deny Campbell any recourse in law, even though his actions which allegedly prompted his discharge served a vital public interest defined by statute—the protection of the public from dangerous drugs. *See generally*, 21 U.S.C. § 301 *et seq.* (1972). Assuming the veracity of Campbell's allegations, the refusal of the law to recognize his retaliatory discharge as actionable is repugnant.

This Court has recognized that the employment at will doctrine is not inviolate. In *Frampton v. Central Indiana Gas Company*, (1973), 260 Ind. 249, 297 N.E.2d 425, we held that an employee who alleged she was discharged in retaliation for filing a workmen's compensation claim stated a claim upon which relief could be granted. Our recognition of that exception to the employment at will doctrine was based on the conclusion that to hold otherwise would clearly contravene the public policy considerations surrounding our workmen's compensation scheme. We grounded the opinion on the legislature's express statement that no "device" should "operate to relieve any employer in whole or in part of any obligation created by this act [Workmen's Compensation]." 260 Ind. at 252, 297 N.E.2d at 428. Inasmuch as the threat of retaliatory discharge would operate to relieve an employer of his statutory duty to compensate an injured employee, we recognized such a dismissal as actionable.

Subsequent decisions in this jurisdiction have limited the applicability of the exception recognized in *Frampton* to the circumstances present in that case. *Martin v. Platt*, (1979) Ind.App., 386 N.E.2d 1026 (no petition for transfer filed); *Shaw v. S. S. Kresge Company*, (1975) 167 Ind.App. 1, 328 N.E.2d 775. *Martin v. Platt, supra*, which was vigorously criticized in Townsend, *1979 Survey of Recent Developments in Indiana Law*, 13 Ind.L.Rev. 381 (1979), involved facts very similar to the case at bar. There, the employees-plaintiffs alleged that they were discharged in retaliation for reporting to their superiors that officers of the employing corporation were receiving kickbacks. On the basis of their status as employees at will, the Court affirmed the summary judgment entered against their suit.

Notwithstanding the decisions in *Martin* and *Shaw*, judges of our appellate tribunals have leveled criticism at the employment at will doctrine. *See, Scott v. Union Tank Car Co.*, (1980) Ind.App., 402 N.E.2d 992, 995 (Staton, J. dissenting: "[T]he inflexible application of the 'employment at will' doctrine simply is not always consonant with the ends of justice.") In the instant case, Judge Ratliff, dissenting below, analyzed extensively the employment at will doctrine vis-a-vis the public policy considerations involved, and concluded:

> " * I would not so strictly limit the *Frampton* rule as did the Third District in *Martin v. Platt, supra*. Instead, I would extend the protection of the 'public policy exception' to grant a right of action for damages to any employee at will whose wrongful and retaliatory discharge contravenes clearly established public policy. * * *
>
> "The appropriate remedy, in my view, as supported by the cases and commentary cited herein, is a tort action for damages. (Footnote omitted.) Giving such a right of action for damages would serve as a deterrent to retaliatory discharge and would promote the very same strong and compelling public policy which the retali-

atory discharge would violate." *Campbell v. Eli Lilly & Co., supra,* at 1067. I agree with Judge Ratliff in these respects.

It seems wholly illogical that on the one hand, as in *Frampton,* we permit a cause of action where a statutory policy operates to the specific benefit of the employee, while on the other, as here and in *Martin,* a cause of action is denied where the statutory policy inures to the general welfare. In each instance, a public policy has been clearly stated by statute; in each instance, the fear of retaliatory discharge without recourse in law would obviously work to frustrate or thwart the clearly expressed policy. For as Judge Ratliff succinctly acknowledged in his dissenting opinion:

"Neither crystal ball nor prophetic power is required in order to discern that if such a whistle-blower may be retaliatorily discharged without recourse, the intimidating effect upon other employees will ensure that the first whistle-blower will also be the last." *Id.*

The exercise of civic duty or, as the case might be, professional ethical responsibilities, should not lightly be discouraged. Our government yet seeks citizen input to improve the quality of life and perpetuate the pursuit of life, liberty, and happiness; our law enforcement agencies still actively solicit citizens to report crimes which they witness.[2] Indeed, in the areas of food and drug safety and white collar crime, such as allegedly present here and in *Martin,* the government's ability to police wrongdoing of a tortious or criminal nature rests in large part on the hope that businesses will deal in good faith and report accurately and completely.

Our continued inflexible application of the rule, however, not only neuters the internal check which the aware employee inherently supplies, but also ultimately deprives the government of information concerning goods or conduct potentially injurious to the public welfare. It is these dubious ramifications which should not be countenanced, as well as the callous treatment which the rule permits to be foisted on the citizen who, in good faith, acts on the principle of civic duty or the mandates of a professional ethical code.

To be sure, there are employees with "axes to grind" who, motivated by paranoia or personal conflict, make groundless allegations to superiors and thereby warrant discharge. Just as surely there are business operations which, for monetary gain or reputation, are conducted in a negligent or criminal manner. These are not questions of law, however, and are not at issue here.[3] Our sole concern is whether the law should permit Campbell to present his case to a jury and allow it to decide if in fact he acted responsibly in reporting to his superiors and if in fact Eli Lilly dismissed him in retaliation for so reporting. Our courts should be open for the resolution of these questions.

Our continued inflexible application of the employment at will doctrine in circumstances such as those presented here, as well as in *Martin v. Platt, supra,* flies in the face of a rapidly growing tide of contrary authority. Jurisdiction after jurisdiction, when confronted with circumstances equally offensive to clearly mandated public policy, has recognized a cause of action for a discharged employee. *See, e. g., Tameny v. Atlantic Richfield Co.,* (1980) 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (employee allegedly discharged for refusal to participate in illegal gasoline price-fixing); *Petermann v. International Brotherhood of Teamsters,* (1959) 174 Cal.App. 184, 344 P.2d 25 (employee allegedly discharged for refusal to give false testimony to legislative committee); *Sheets v. Teddy's Frosted Foods, Inc.,* (1980) 179 Conn. 471, 427 A.2d 385 (employee allegedly discharged for calling to attention of employer violations of law prohibiting mislabeling of food); *Palmateer*

---

2. While a citizen is not required by law to report the commission of a crime or violation of law, the state may require a citizen to testify once a lawsuit is initiated. Ind.Code § 35-1-31-1 (Burns 1979 Repl.).

3. These are factual matters for the jury to resolve, and upon which no opinion is here expressed.

*v. International Harvester Company,* (1981), 85 Ill. 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (employee allegedly discharged for informing law enforcement officials that fellow employee was violating criminal code); *Trombetta v. Detroit, Toledo & Ironton R. R. Co.,* (1978) 81 Mich.App. 489, 265 N.W.2d 385 (employee allegedly discharged for refusing to falsify official reports); *Pierce v. Ortho Pharmaceutical Corp.,* (1979) 166 N.J. Super. 335, 399 A.2d 1023 (employee-doctor allegedly discharged for difference of opinion regarding safety of testing drugs on humans); *Monge v. Beebe Rubber Co.,* (1974) 114 N.H. 130, 316 A.2d 549 (employee allegedly fired for refusing to date employer); *Nees v. Hocks,* (1975) 272 Or. 210, 536 P.2d 512 (employee allegedly discharged for serving jury duty); *Reuther v. Fowler and Williams, Inc.,* (1978) 255 Pa.Super. 28, 386 A.2d 119 (employee allegedly discharged for serving jury duty); *Harless v. First Natl. Bank in Fairmount,* (1978), W.Va., 246 S.E.2d 270 (employee allegedly discharged for reporting to superiors violations of consumer credit legislation and promoting compliance therewith).

Other jurisdictions have expressly recognized that an employer's right to discharge employees at will should not be permitted to override competing claims of public interests, but have denied a cause of action on the basis of the facts presented in the particular case. *See, e. g., Larsen v. Motor Supply Co.,* (1978) 117 Ariz. 507, 573 P.2d 907; *Scroghan v. Kraftco Corporation,* (1977) Ky., 551 S.W.2d 811; *Jackson v. Minidoka Irrigation District,* (1977) 98 Idaho 330, 563 P.2d 54; *Roberts v. Atlantic Richfield Co.,* (1977) 88 Wash.2d 887, 568 P.2d 764.

And finally, commentator after commentator has decried the circumvention of public policy and extraordinarily harsh results which oftentimes results from an inflexible application of the employment at will doctrine. *See, e. g., Blades, Employment at Will v. Individual Freedom: On Limiting the Abusive Exercise of Employer Power,* 67 Colum.L.Rev. 1404 (1967); Comment, *Protecting the Private Sector at Will Em-*

*ployee Who "Blows the Whistle"*: A *Cause of Action Based Upon Determinants of Public Policy,* 1977 Wisc.L.Rev. 777 (1977); Note, *Implied Contract Rights to Job Security,* 26 Stan.L.Rev. 335 (1973–74); Note, *A Common Law Action for the Abusively Discharged Employee,* 26 Hast.L.J. (1975); Note, *Protecting at Will Employees Against Wrongful Discharge; The Duty to Terminate Only in Good Faith,* 93 Harv.L.Rev. 1816 (1980).

One basic premise pervades this body of case and secondary authority: while significant regard must be maintained for the interest of employers to conduct business efficiently and profitably, a proper balance must be struck against society's interest in the effectuation of its clearly mandated public policies and employees' interest in earning a living. Where a discharged employee's claim does not rest on an employer's conduct in contravention of clearly mandated public policy, a cause of action should rightfully be denied. *See, e. g., Shaw v. S. S. Kresge,* (1975) 167 Ind.App. 1, 328 N.E.2d 775 (discharge allegedly in violation of company handbook requirements of three warnings slips and a hearing); *Keneally v. Orgain,* (1980) Mont., 606 P.2d 127 (discharge allegedly resulting from dispute over internal management system); *Jones v. Keogh,* (1979) Vt., 409 A.2d 581 (discharge allegedly because employee took too much sick leave); *Campbell v. Ford Industries, Inc.,* (1976) 274 Or. 243, 546 P.2d 141 (discharge for attempt to examine company's books in capacity as employee-shareholder); *Abrisz v. Pulley Freight Lines,* (1978) Iowa, 270 N.W.2d 454 (employee discharged for impugning company's integrity); *Larsen v. Motor Supply Co., supra* (employee discharged for refusing psychological-stress evaluation); *Scroghan v. Kraftco, supra* (employee discharged for attending night school); *Jackson v. Minidoka Irrigation District, supra* (employee discharged for improper use of company Christmas fund.) An employer should be protected against unfounded, vindictive and frivolous claims; to that end, the traditional employment at will rules should remain.

On the other hand, the public is entitled to the protection of its interests upon proof of violations of clearly mandated public policy; to that end, an exception to the general rule should be recognized. No more compelling example for such need exists than the circumstances alleged here.

Finally, I note that the employment at will doctrine is unique to American jurisprudence. In the nineteenth century, our common law diverged from the rule in England, where an employment contract for an indefinite period was presumed to amount to a contract for one year. *See* Feinman, *The Development of the Employment at Will Rule,* 20 Am.J.Legal Hist. 118 (1976); Note, *Implied Contract Rights to Job Security, supra.* This deviation in our common law is attributed to the rise of laissez-faire and free enterprise socio-economic principles. *See,* Note *Protecting at Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith, supra* at 1825; Comment, *Protecting the Private Sector at Will Employee who "Blows the Whistle," supra* at 782. By the early twentieth century, the doctrine was firmly ensconced as the majority rule in the United States. *Id.*

Meanwhile, however, every other industrialized country has opted to protect employees against wrongful discharges. Note, *Protecting at Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith, supra* at 1835–36 and 1844. And our own federal and state governments have limited the applicability of the doctrine, excluding public employees from its scope. *See,* 5 U.S.C. § 7503 (Supp. 1980); Ind.Code § 4–15–1–1 *et seq.* (Burns 1974). Today, the doctrine is generally applicable only to employees in the private sector not protected by a collective bargaining agreement.

Here, we sent those Indiana employees a message: job security is dependent upon the employee's ability to remain silent about an employer's violations of law and acts injurious to the public welfare.

In our continued application of common law principles, it behooves us always to inquire: does it make sense and is it just? The employment at will doctrine is not of messianic origin; as so many jurisdictions have recognized, the rule is amenable to adaptation. In most instances, the rule can and should continue to govern this jurisdiction. It should not, however, be applied in circumstances where it serves indirectly to perpetuate and implicitly to condone employers' violations of clearly expressed public policy. Such is the case here.

I dissent and would grant transfer, vacate the decision of the Court of Appeals and reverse the trial court.