436 N.E.2d 804 (1982)
Mark A. MILLER, Claimant-Appellant,
v.
REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION, William H. Skinner, David L. Adams, and Paul M. Hutson, As Members of and Constituting the Review Board of the Indiana Employment Security Division, and Stoutco, Inc., Respondents-Appellees.
No. 2-581A153.
Court of Appeals of Indiana, First District.
June 15, 1982.
*805 John R. Frechette, Gildea, Long & Frechette, P.C., Elkhart, for claimant-appellant.
Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for Review Bd. of Indiana Employment Sec. Div.
NEAL, Judge.

STATEMENT OF THE CASE
Claimant-appellant Mark A. Miller (Miller) appeals from a decision of the Employment Security Review Board (Review Board) that denied his claim for unemployment compensation and ordered the repayment of benefits theretofore received by Miller.
We reverse.

STATEMENT OF THE FACTS
The Deputy awarded Miller unemployment compensation, determining that Miller had not been discharged by his employer, Stoutco, Inc. (Stoutco), for just cause. An Appeals Referee, after hearing evidence, reversed the award, and entered the following Findings of Fact, Conclusion, and Decision:
"FINDINGS OF FACT: The evidence established that the claimant worked for the subject employer for a period from May 5, 1980, through June 30, 1980, as a Sales Engineer. His rate of pay at the time of separation was $16,500.00 per year, plus benefits. The evidence further established that the claimant was, in fact, discharged June 30, 1980. Claimant had been hired for the position of Sales Engineer after a thorough interview by the employer. At no time during the interview did the claimant indicate to the employer that he was a candidate for State Representative and if, in fact, elected, it would be necessary that he be given substantial time off on a yearly basis to perform his duties as an elected official. When the employer became aware of the fact that the claimant was, in fact, a candidate for office, the claimant was confronted about the problem and told by the employer that it would be necessary for him to make a decision whether or not he wanted to continue employment or continue as a candidate for State Representative. The employer indicated to the claimant that they could not spend the time and money required to train him with the possibility of losing him within a very short period of time or on an annual basis, if they elected to continue his employment while he served as a State Representative. The claimant decided that he could not withdraw his candidacy for State Representative and, therefore, the claimant was terminated effective June 30, 1980. It was the employer's position that the claimant had withheld this information, which definitely had a bearing, or would have, had they known about the candidacy at the time of the claimant's hire. For this reason the claimant was, in fact, terminated effective June 30, 1980.
CONCLUSION: From the foregoing findings it must be concluded that the claimant was discharged for just cause within the meaning and intent of Chapter 15, Section 1 of the Act, his actions evidencing a breach of duty reasonably owed an employer by an employee.
DECISION: The determination of the deputy is reversed. Claimant is denied benefits in accordance with Chapter 15, Section 1 of the Act. In addition, benefits received by the claimant are due the Division as a refund in accordance with Chapter 13, Section 1 of the Act."
The Review Board adopted the above and affirmed the Referee's decision; this appeal followed.
*806 In addition to the evidence related in the findings restated above, the record reveals without contradiction that during Miller's pre-employment interviews, of which there were apparently several, Stoutco directed no inquires regarding the extent to which Miller was involved in political activities or whether Miller had any political ambitions, although Miller had indicated on his application that among his interests and activities was "working with ... political organizations." Miller made no further disclosures regarding his political activities. Miller was not a candidate for political office at the time of his original interview, but became one prior to the commencement of his employment. Stoutco did not have a stated policy forbidding its employees from running for political office or otherwise engaging in political activities. In fact, Stoutco's personnel manager was a member of the Elkhart City Council and an announced candidate for mayor of Elkhart. There is no showing whatever that, prior to his termination, any political activity on the part of Miller interfered with his performance on the job or that the discharge was for any reason other than his refusal to withdraw his candidacy.

ISSUE
Miller presents three issues for review. Because of our disposition of this appeal, however, we need consider only the following issue:
Whether the Review Board's denial of unemployment compensation to Miller constitutes an impermissible infringement upon the political freedoms guaranteed by the First and Fourteenth Amendments to the United States Constitution.

DISCUSSION AND DECISION
The Review Board found that there was just cause for Miller's discharge because his actions evinced a "breach of duty reasonably owed an employer by an employee," although it is not clear whether the breach of duty found was Miller's failure to apprise Stoutco of his candidacy during his later pre-employment interviews or his refusal to withdraw his candidacy after being confronted by Stoutco and receiving its ultimatum. Ind. Code 22-4-15-1 (Supp. 1979) provides in part that:
"`Discharge for just cause' ... is defined to include but not be limited to separation initiated by an employer for ... any breach of duty in connection with work which is reasonably owed employer by an employee."
In Wakshlag v. Review Board of the Indiana Employment Security Division, (1980) Ind. App., 413 N.E.2d 1078, after noting that the employer bears the burden of establishing that the discharge was for just cause, we said:
"Whether unemployed persons are without fault must be determined upon the facts and circumstances of the individual case. Thompson v. Hygrade Food Products Corp., (1965) 137 Ind. App. 591, 210 N.E.2d 388. Determination of cause is a question of fact. [Gardner v. Review Board, (1943) 162 Ind. App. 125, 318 N.E.2d 361] It is conduct evidencing such wilful or wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has a right to expect of his employee, or a carelessness or negligence of such a degree or recurrence as to manifest equal culpability, wrongful intent, or evil design, or to show an intentional or substantial disregard of the employer's interest, or of the employee's duties or obligation to his employer. Arthur Winer, Inc. v. Review Board, (1950) 120 Ind. App. 638, 95 N.E.2d 214." (Emphasis omitted.)
413 N.E.2d at 1082. Our standard of review was then set out in Wakshlag as follows:
"`Initially we point out that generally the Review Board's decision as to the questions of fact is conclusive and binding on this court... . In reviewing the evidence to support the Review Board's determination we may not weigh the evidence and may consider only that evidence and the reasonable inferences therefrom most favorable to the Board'[s] *807 decision... . On appeal, we may only disturb the decision of the Review Board if reasonable persons would be bound to reach a different conclusion on the evidence in the record.' (Citations omitted.)"
413 N.E.2d at 1082.
We find no conflict in the evidence. The essence of Miller's position is that the state action in denying him benefits under these facts constitutes an infringement upon his constitutionally protected right to engage in political activity, in particular, his right to participate in the electoral process as a candidate for public office. The Review Board does not squarely confront Miller's constitutional argument, but maintains that the determination that Miller's discharge was for just cause was correct.
The issue raised herein directs our attention not to the actions of the employer Stoutco in discharging Miller, but to the action of the state in denying a public benefit to Miller. Indiana has recently reaffirmed the employment at will doctrine under which an employee at will may be discharged by his employer for any cause whatever, or for no cause, without giving rise to an action for damages. Campbell v. Eli Lilly and Company, (1980) Ind. App., 413 N.E.2d 1054 (transfer denied; Hunter, J., dissenting to denial of transfer, Campbell v. Eli Lilly and Company, (1981) Ind., 421 N.E.2d 1099); Martin v. Platt, (1979) Ind. App., 386 N.E.2d 1026. An exception is recognized, however, and a cause of action will lie if the plaintiff-employee demonstrates he was discharged in retaliation for having exercised a statutorily conferred personal right or having fulfilled a statutorily imposed personal duty. Frampton v. Central Indiana Gas Company, (1973) 260 Ind. 249, 297 N.E.2d 425 (action for damages for wrongful discharge where employee fired for having filed a Workmen's Compensation claim). Miller, as an employee at will, could have been discharged without cause, but just cause is required to permit the denial of benefits.
In Sherbert v. Verner, (1963) 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965, the Supreme Court of the United States considered the propriety of South Carolina's denial of unemployment compensation benefits to a claimant who was discharged for refusing for religious reasons to work on Saturdays. At the time Sherbert, the claimant, became a member of the Seventh-day Adventist Church she was working Monday through Friday for her employer. Subsequently, the work week was expanded to six days, including Saturday. The Seventh-day Adventist Church interprets the Bible to provide that the Sabbath falls on Saturday, and a basic tenet of the faith prohibits labor on that day. Consequently, Sherbert refused to work on Saturday and was discharged. Having failed to find suitable non-Saturday employment, she sought unemployment compensation benefits. Her claim was rejected under a provision of the South Carolina Unemployment Compensation Act that disqualifies claimants who fail, without good cause, to accept suitable work offered by the employer. Sherbert's disqualification was ultimately upheld by the South Carolina Supreme Court, which rejected her claim that, as applied to her, the statute abridged her right to the free exercise of her religion secured under the Free Exercise Clause of the First Amendment through the Fourteenth Amendment.
The Supreme Court of the United States reversed. Initially, the Court found that the disqualification for benefits imposed upon Sherbert a burden on the free exercise of her religion. The Court stated:
"For `[i]f the purpose or effect of a law is to impede the observance of one or all religions or is to discriminate invidiously between religions, that law is constitutionally invalid even though the burden may be characterized as being only indirect.' [citation omitted] Here not only is it apparent that [Sherbert's] declared ineligibility for benefits derives solely from the practice of her religion, but the pressure upon her to forego that practice is unmistakable. The ruling forces her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept *808 work, on the other hand. Governmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against [Sherbert] for her Saturday worship."
374 U.S. at 404, 83 S.Ct. at 1794. Having found the existence of the burden, the Court then considered whether such a burden could be justified by a compelling state interest, for only upon such a showing could the state permissibly limit Sherbert's free exercise. Upon examining the interests set forth by the state, including the necessity of guarding against fraudulent claims, undue dilution of the unemployment compensation fund, and disruption of scheduling necessary Saturday work, the Court concluded it was highly doubtful whether such interests were sufficient to "warrant a substantial infringment of religious liberties." 374 U.S. at 407, 83 S.Ct. at 1795.
Sherbert was recently relied upon in Thomas v. Review Board of the Indiana Employment Security Division, (1981) 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624, a case that wended its way through the appellate tribunals of this state before meeting its ultimate disposition. Thomas is a Jehovah's Witness who was employed by the Blaw-Knox Foundry and Machinery Company initially to work in its roll foundry, which fabricated sheet steel for a variety of industrial uses. When the roll foundry was closed, Thomas was transferred to a department that fabricated turrets for military tanks. Thomas believed that he could not, consistent with his faith, participate directly in the production of armaments, and, upon finding that all remaining departments at Blaw-Knox were engaged in the direct production of weapons, ultimately quit. Thomas applied for unemployment compensation benefits under Ind. Code 22-4-1-1 et seq., but his claim was denied at the administrative level. Thomas successfully appealed the administrative denial of his claim in this court. In a 2-1 decision (Buchanan, C.J., dissenting) the Second District found that the disqualifying statute, Ind. Code 22-4-15-1, as applied to Thomas's claim improperly burdened his right to the free exercise of his religion.[1] Our Supreme Court, however, accepted transfer and vacated the opinion in Thomas v. Review Board of the Indiana Employment Security Division, (1979) Ind., 391 N.E.2d 1127. Therein, the court noted that the purpose of the Act is to provide benefits for persons unemployed through no fault of their own, and that good cause that justifies involuntary termination must be job-related and objective in character. The court found that Thomas quit voluntarily for personal reasons, and, therefore, did not qualify for benefits. The court, in essence, held that the exercise of a personal philosophical choice did not give rise to a First Amendment claim.
The Supreme Court of the United States reversed. The Court stated:
"More than 30 years ago, the Court held that a person may not be compelled to choose between the exercise of a First Amendment right and participation in an otherwise available public program... .
* * * * * *
Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial."
450 U.S. at 716-18, 101 S.Ct. at 1431-32. The Court accorded no distinction to the fact that Thomas's termination was voluntary whereas in Sherbert the termination was involuntary. The Court further said:
"The state may justify an inroad on religious liberty by showing that it is the least restrictive means of achieving some compelling state interest. However, it is *809 still true that `[t]he essence of all that has been said and written on the subject is that only those interests of the highest order ... can overbalance the legitimate claims to the free exercise of religion." (Citation omitted.)
450 U.S. at 718, 101 S.Ct. at 1432. The Court determined that the asserted state interests in (1) avoiding widespread unemployment and the consequent burden on the unemployment compensation fund if employees were permitted to leave their jobs for personal reasons, and (2) avoiding detailed probing by employers into job applicants' religious beliefs, while not unimportant, where not shown to be sufficiently compelling to justify the burden placed on free exercise of religion.
The Sherbert and Thomas cases prescribe the analytical framework within which we must consider Miller's constitutional claim. Accordingly, we shall determine (1) the nature and extent of Miller's First Amendment right to engage in political activity; (2) whether the disqualification for unemployment benefits imposed a burden upon the exercise of that right; and (3) whether such burden, if found to exist, is justified by the showing of a constitutionally sufficient state interest.
Many cases have considered the nature and extent of First and Fourteenth Amendment rights in the political context. We first note that the lack of a contractual or tenure right to continued employment does not alone defeat the claim that a termination of employment violated the Constitution. In Perry v. Sindermann, (1972) 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 the Court stated:
"[E]ven though a person has no `right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests  especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to `produce a result which [it] could not command directly.' Speiser v. Randall, 357 U.S. 513, 526 [78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460]. Such interference with constitutional rights is impermissible.
We have applied this general principle to denials of ... unemployment benefits [citing Sherbert]. .. ."
The case of Morial v. Judiciary Commission of the State of Louisiana, (5th Cir.1977) 565 F.2d 295, involved the right of government to restrict political expression. The suit challenged, on the basis of the First Amendment, a Louisiana statute and a canon of judicial ethics that require a judge to resign before running for an elective non-judicial political office. The court stated that the right to be a candidate is important, if not fundamental. To justify the restriction of such a right there must be a reasonable necessity on the part of government. The court, though upholding the canon, stated that the interests of public employees in free expression and political association are unquestionably entitled to the protection of the First and Fourteenth Amendments. It further cautioned that the ruling was not to be considered a blanket approval of restricting the right of public employees to become candidates for public office. A like result was reached in United States Civil Service Commission v. National Association of Letter Carriers, AFL-CIO, (1973) 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796, which upheld the validity of a provision of the Hatch Act that restricts the extent of federal employees' political activities, wherein the court added that "the problem in any case is to arrive at a balance between the interest of an employee as a citizen commenting on matters of public concern and the interest of the government as an employer in promoting the efficiency of the public service through its employees." Neither the right to associate nor the right to participate in political activities are absolute in any event.
*810 It was stated in United States v. Tonry, (5th Cir.1979) 605 F.2d 144, wherein a probationer challenged the constitutionality of a condition of his probation that he not run for office:
"There is no question that candidates for office and participating in political activities are forms of expression protected by the first amendment... ."
605 F.2d at 150. It was stated in Monitor Patriot Co. v. Roy, (1971) 401 U.S. 265, 91 S.Ct. 621, 28 L.Ed.2d 35, a libel case,
"And if it be conceded that the First Amendment was `fashioned to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by the people,' [citation omitted] then it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigning for political office."
401 U.S. at 271-72, 91 S.Ct. at 625. See also, Buckley v. Valeo, Secretary of the United States Senate, (1976) 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659. A prohibitively large filing fee for public office has been held to constitute a denial of equal protection under the Fourteenth Amendment. Bullock v. Carter, (1972) 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92; Lubin v. Panish, (1974) 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702. In Lubin the court held that the right of a party or an individual to a place on the ballot is entitled to protection of the First and Fourteenth Amendments. Substantial burdens on the right to vote or to associate for political purposes are constitutionally suspect and invalid under the First and Fourteenth Amendments unless essential to serve a compelling state interest. Storer v. Brown, (1974) 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714; N.A.A.C.P. v. Alabama, (1958) 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488.
We observe that the Supreme Court of the United States, by application of the First and Fourteenth Amendments, refused to permit unemployment benefits to be withheld by the state in Sherbert and Thomas where the claimant was fired for refusing to work, or quit, because of a conflict between job conditions and religious principles. The question under the cases is not whether the employer had a right to fire an employee at will; rather, the focus is upon the state action in withholding benefits because of the adherence of the claimant to his First Amendment rights. While Sherbert and Thomas considered First and Fourteenth Amendment rights in matters pertaining to religious belief, the authorities cited and quoted above establish unquestionably that the rights of voting, speech, political association and candidacy are also protected under the First Amendment. Under Frampton, Campbell, and Martin, Indiana has established that the discharge of an employee at will because of the employee's exercise of a personal right conferred by positive law is actionable, and such, therefore, cannot amount to just cause under the unemployment statutes.
Here the sole cause of discharge, admittedly, was the candidacy, and there was no contention that at the time of the discharge the candidacy interferred with his employment. There is no showing that any misrepresentation was made by Miller to obtain the employment. We fail to see that a duty existed on Miller's part to make a voluntary disclosure of his intentions; this is especially true with the example of the political involvement of the personnel manager in front of him. If abstinence from politics was a condition of employment Stoutco should have made it known. Therefore, under the cases, denial of a public benefit, the unemployment compensation claim, cannot be sustained if it so operates to inhibit or deter First Amendment freedoms, here candidacy, in absence of a clear showing of a reasonably necessary state interest. The state has advanced none.
We acknowledge that this area of the law is fact sensitive. We therefore limit the holding to the facts of this case.
For the above reasons, this cause is reversed.
Reversed.
ROBERTSON, J., concurs.
RATLIFF, P.J., concurs with opinion.
*811 RATLIFF, Presiding Judge, concurring.
For the reasons stated in my dissenting opinion in Campbell v. Eli Lilly & Co., (1980) Ind. App., 413 N.E.2d 1054, 1063-68; and in the dissenting opinion by Justice Hunter in Campbell v. Eli Lilly & Co., (1981) Ind., 421 N.E.2d 1099, I do not accept, without qualification, the statement in the majority opinion that under the employment at will doctrine as followed in Indiana, an employee at will may be discharged by his employer for any cause whatever, or for no cause, without giving rise to an action for damages. Slip Opinion at 5. Neither can I accept the unequivocal statement on page 6 of the majority slip opinion that Miller, as an employee at will, could have been discharged without cause. In my view, as I have previously expressed, there are limitations upon the right of an employer to discharge an at will employee, such as when such discharge is in retaliation for the exercise by the employee of a statutorily conferred or constitutionally guaranteed right or when such discharge seriously undermines some compelling public policy.[1] However, we are not faced here with the question of the right of Stoutco, Inc., to discharge Miller, or with the issue of any attendant civil liability attaching to such discharge. Rather, the sole question before us in this case is the propriety of the denial of unemployment compensation benefits. The majority's statements concerning the right to discharge an employee at will are not germane to the issue before us and are unnecessary to the resolution of this case. Thus, such statements are surplusage, and although I do not agree with the overbroad generality of such statements, they form no obstacle to my concurrence in this case.
NOTES
[1] Reference, Thomas v. Review Board of the Indiana Employment Security Division, (1978) Ind. App., 381 N.E.2d 888 (vacated).
[1] I concede that Indiana so far has rejected the "public policy exeception" to the employee at will doctrine. Campbell v. Eli Lilly & Co., (1980) Ind. App., 413 N.E.2d 1054 (transfer denied; Hunter, J., dissenting to denial of transfer); Martin v. Platt, (1979) Ind. App., 386 N.E.2d 1026. Nevertheless, I am convinced such is the emerging rule and in time will be recognized in this jurisdiction.