STOUTCO, INC., Plaintiff,

v.

AMMA, INC.; Monarch Distributing; Consumers Buying Service; Monarch American Marketing; American Marketing, Inc.; and John Pinciaro, Defendants.

No. S 83–284.

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 30, 1985.

Paul E. Becher, Richard M. Treckelo, Elkhart, Ind., for plaintiff.

James M. Miller, South Bend, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This case was tried by the court, without the intervention of a jury, on September 11, 1985. The parties were given until September 23, 1985 to file post-trial briefs, which they did. On October 7, 1985, the court entered a Memorandum and Order requiring the plaintiff to elect which theory of recovery it wished to pursue, whether on the account or on the dishonored check, or provide the court with authority as to why it should not be required to make such election. On or about October 16, 1985, the plaintiff, by counsel elected to proceed on the Counts relevant to the dishonored

check being Counts II and III of plaintiff's complaint. The defendants, John Pinciaro and AMMA, Inc. maintain that plaintiff has failed to prove that it is entitled to relief under Counts II and III of its complaint. Further, defendant John Pinciaro maintains that this court cannot exercise personal jurisdiction over him because he lacks sufficient minimum contacts with the State of Indiana. This memorandum and order is intended to comply with Rule 52 of the Federal Rules of Civil Procedure.

The first issue to be determined by the court is whether the defendant, John Pinciaro, has waived the defense of lack of personal jurisdiction in this case. Rule 12(h)(1) of the Federal Rules of Civil Procedure provides in pertinent part as follows:

> A defense of lack of jurisdiction over the person, ... is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under the rule nor included in a responsive pleading ...

Fed.R.Civ.Proc. 12(h)(1). Subdivision (g) of Rule 12 provides in pertinent part as follows:

> A party who makes a motion under this rule may join with it any other motions herein provided for and then available to him. If a party makes a motion under this rule but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted, ...

Fed.R.Civ.Proc. 12(g). The record in this case reveals that all of the defendants in this case, including John Pinciaro, filed a motion to dismiss in this case on the ground of lack of personal jurisdiction on July 11, 1983. The memorandum submitted contemporaneously with said motion was entitled "Memorandum in Support of Defendant AMMA, Inc.'s Motion for Dismissal" and the arguments contained therein were specifically addressed to the issue of whether the court could exercise personal jurisdiction over defendant AMMA, Inc. On September 6, 1983, the defendants filed

a supplemental memorandum in support of the motion to dismiss, which again only addressed the propriety of this court exercising personal jurisdiction over defendant AMMA, Inc. Further, on March 28, 1984, defendant John Pinciaro filed a Motion to Dismiss on the ground that plaintiff's complaint failed to state a claim against him. There is no mention in said motion of lack of personal jurisdiction. Accordingly, based on the record as described above, this court finds that the defendant, John Pinciaro, has waived his defense of lack of personal jurisdiction in this case.

## A. FINDINGS OF FACT

American Marketing, Inc. and AMMA, Inc. are one and the same entity. In March 1983, American Marketing, Inc. placed an order with the plaintiff for product in the total amount of $38,072.88. Said product was delivered to and retained by defendants and plaintiff's Invoice No. 34283, dated March 8, 1983 was issued to defendants. Defendants paid the sum of $333.34 on said invoice and the principal sum of $37,739.46 remains unpaid.

On March 2, 1983, check number 2691, drawn on AMMA, Inc.'s account in Connecticut and signed by defendant John Pinciaro as President of AMMA, Inc. was issued, payable to plaintiff in the sum of $37,000.00. Said check was sent to plaintiff and arrived at Stoutco on March 4, 1983. From March 11 through March 13, 1983, a trade show was held in Baltimore, Maryland. Defendant John Pinciaro, together with another representative of AMMA, Inc., Andrew Tournas, attended said trade show. Representatives of Stoutco, Inc., namely, Richard Ouding and David Rabias also attended the trade show in Baltimore. During the trade show, Richard Ouding informed Mr. Pinciaro and Mr. Tournas that Stoutco, Inc. had decided that it was not going to renew the letter of agreement with AMMA, Inc. and told Mr. Tournas that a letter advising AMMA, Inc. of the decision not to renew the agreement would be forthcoming. Accordingly, Mr. Pinciaro and Mr. Tournas began contacting

manufacturers at the trade show who could offer a substitute of the line of products being purchased from Stoutco, Inc.

During the trip back to Connecticut following the Baltimore trade show, Mr. Pinciaro and Mr. Tournas discussed the ramifications of Stoutco, Inc.'s decision not to renew the distributorship. The ramifications discussed included the loss of a significant percentage of AMMA, Inc.'s gross sales without a substitute line of product; the difficulty to be encountered in finding a substitute in time for the approaching sales season; the truckload of merchandise recently received which would suffer the loss of the manufacturer's support and credibility; and the apparent unwarranted termination of the distributorship agreement.

On March 14, Mr. Pinciaro inquired of AMMA, Inc.'s bank whether the March 2, 1983 check to Stoutco, Inc. had cleared. Upon learning that it had not, he caused a stop payment order to be placed on the check. The check in question was presented for payment on March 23, 1983 and was not honored in the usual course of business. Defendants were notified of the dishonor and demand for payment was made on May 5, 1983. None of the defendants have paid said check.

By letter dated March 25, 1983, Stoutco, Inc. informed AMMA, Inc. that it was not going to renew the letter of agreement of April 27, 1982. The letter of March 25, 1983 also contained the following paragraph: "Though we do expect you to see through the unexpired warranty periods of Foxfire products and to handle reasonable warranty claims if any, you may be assured that we will handle them in the same manner with you as has been done in the past." At all relevant times, there were sufficient funds in AMMA, Inc.'s account to cover check No. 2691.

## B. CONCLUSIONS OF LAW

Count II of plaintiff's complaint seeks recovery of the face amount of check number 2691, issued by AMMA, Inc. to Stoutco, Inc. dated March 2, 1983, plus interest, court costs and reasonable attorney's fees

pursuant to I.C. § 28–2–8–1. That statute has been amended twice since this case was filed but those amendments are not retroactive and thus not applicable to this case. Accordingly, the pertinent part of I.C. § 28–2–8–1 as applicable to this case provided as follows:

> A person who, having executed and delivered to another person a check ... without valid legal cause shown stops payment on the check ... is, if found liable under applicable law to the holder on the check or draft in a court action, liable also for: (1) interest ...; (2) court costs ...; and (3) all other costs of collection, including reasonable attorney's fees....

The only disputed issues with respect to this Count are (1) whether the defendants stopped payment on the check "without valid legal cause shown"; and (2) whether defendant John Pinciaro may be held individually liable under the statute.

 The term "valid legal cause" is not defined in the statute nor has that term been defined by the courts in Indiana in the context of that statute nor in a similar context. Accordingly, the court must construe or interpret the statute giving the words and phrases their ordinary or usual meaning. *See* I.C. § 1–1–4–1. Both parties have quoted definitions of the three terms contained in the phrase "valid legal cause" from two different dictionaries. Although the definitions vary a little, the end result is basically the same. The parties differ only as to whether the term should be given an objective or subjective meaning. The defendants maintain that the term should be given a subjective meaning thus requiring a defendant to prove something less than an unbeatable cause of action in favor of the party stopping payment of the check in order to defeat a plaintiff's recovery under I.C. § 28–2–8–1. In support of their argument, the defendants emphasize that the underlying transaction in this case was a commercial one and that it is difficult for one to know at the time the stop-payment decision is being contemplated whether a cause of action exists and that it will prevail on that cause of action.

Accordingly, the defendants argue that a court should focus on the knowledge and circumstances apparent to the person considering stop-payment at the time of such consideration. The plaintiff, on the other hand, maintains that a defendant must show that it had a legal right to stop payment on a check in order to avoid liability under I.C. § 28–2–8–1. Giving the words their ordinary and usual meaning and considering the term "valid legal cause" in light of the underlying purposes of the statute, this court finds that a determination of "valid legal cause" in the context of this statute must be done on an objective basis. Thus, in order to avoid liability under I.C. § 28–2–8–1, the defendants must show that they had a legal right to stop payment on the check. The defendants have failed to do so in this case. Their "valid legal cause" was an alleged cause of action against plaintiff for wrongful termination of the distributorship agreement between the parties. The defendants filed a counterclaim on that ground. However, the court found that the nonrenewal did not breach the distributorship agreement and dismissed the counterclaim on July 13, 1985. Accordingly, the defendants stopped payment without valid legal cause.

█ The other issue to be decided with respect to Count II is whether John Pinciaro can be held individually liable under I.C. § 28–2–8–1 since he was the individual that actually placed the stop-payment order. The plaintiff argues that the rule and analysis used in cases involving criminal liability for check deception should be applied in this case. That rule basically provides that a corporate officer who issues a worthless check in a corporate name may be held personally liable under a criminal check deception statute. *See, e.g., Walker v. State*, 467 N.E.2d 1248, 1250 (Ind.App. 1984); *Cooper v. State*, 181 Ind.App. 275, 391 N.E.2d 841 (1979). The rationale underlying that rule is that there is no doctrine of agency in criminal law so that the individual who makes or draws a check in a representative capacity, knowing it will not be honored, i.e. with fraudulent intent, cannot be shielded from criminal responsibility

for that act. *Walker v. State*, 467 N.E.2d at 1250–51. Although those cases involve a check that is dishonored and so does this case, there are differences between cases of criminal check deception and cases under I.C. § 28–2–8–1 that indicate that a different approach to personal liability should be applied.

One major difference is that the statutes involved in *Cooper v. State* and *Walker v. State* were criminal statutes and I.C. § 28–2–8–1 provides for civil remedies. An important element in the check deception cases is the fraudulent intent of the maker or drawer of the check. Under I.C. § 28–2–8–1 the intent or knowledge of the maker or drawer of the check is not a critical factor. In this case, the stop-payment order was issued because John Pinciaro believed that the plaintiff had breached an agreement with AMMA, Inc. and that the stop-payment order was therefore warranted. There is no evidence that the stop-payment order was placed on check 2691 to obtain money or property with fraudulent intent.

In Indiana, the law is also clear that a corporate officer or shareholder is not shielded from liability on the basis of his representative capacity when he participates in a tort because an agent is liable for his own torts. *See, American Independent Management Systems v. McDaniel*, 443 N.E.2d 98, 103 (Ind.App.1982). However, an officer or director of a corporation will not be held independently personally liable for inducing the corporation's breach of a contract if the officer or director is acting within the scope of his official duties on behalf of the corporation. *See, e.g., Martin v. Platt*, 179 Ind.App. 688, 386 N.E.2d 1026, 1027 (1979). The difficulty in applying the law in this case is with characterizing the actions of John Pinciaro. It would appear that his actions in placing a stop payment on AMMA, Inc.'s check was more analogous to inducing a breach of contract than a tort. However, the court need not decide that issue as the language of I.C. § 28–2–8–1 provides guidance on determining this issue.

The specific language of I.C. § 28–2–8–1 provides that a person "if found liable under applicable law to the holder on the check or draft in a court action" is then also liable for the remedies provided in the section. The court must therefore determine whether John Pinciaro is liable to the plaintiff on the check in question. AMMA, Inc.'s check number 2691 issued to Stoutco, Inc. was signed by John Pinciaro as president of AMMA, Inc. The name of the corporation and its address appeared in the upper left-hand corner of the check. The signature line in the lower right-hand corner of the check contains the signature of John Pinciaro, Pres. Thus, his representative capacity is clearly designated as is the name of the corporation. The Uniform Commercial Code as adopted in Indiana contains a specific provision with respect to the individual liability of an authorized representative signing an instrument in a representative capacity. See I.C. § 26–1–3–403. Under that statute, it is clear that John Pinciaro cannot be held individually liable on the check in question. Accordingly, John Pinciaro cannot be held individually liable on Count II of plaintiff's complaint.

■ Count III of plaintiff's complaint seeks damages under I.C. § 34–4–30–1 which provides as follows:

> If a person suffers a pecuniary loss as a result of a violation of IC 35–43, he may bring a civil action against the person who caused the loss for:
>
> (1) an amount equal to three (3) times his actual damages;
>
> (2) the costs of the action; and
>
> (3) a reasonable attorney's fee.

In this case, the violation forming the basis for the claim under this section is found at I.C. § 35–43–5–5 which provides in pertinent part as follows:

> A person who knowingly or intentionally issues or delivers a check .... knowing that it will not be paid or honored by the credit institution upon presentment in the usual course of business, commits check deception, a Class A misdemeanor.

This language clearly indicates that the focus must be on the knowledge or intent of the person issuing or delivering the check at the time of issuance or delivery. Subsection (c) of I.C. § 35–43–5–5 provides certain presumptions constituting prima facie evidence with respect to knowledge on the part of the party issuing the check. Those presumptions, however, can be overcome by evidence that the defendant had no such knowledge or intent at the time of issuance or delivery. The facts in this case indicate that AMMA, Inc. had sufficient funds in its account at the time the check was issued and delivered to plaintiff, the day the stop-payment order was issued and the day the check was actually presented for payment. Furthermore, the decision by AMMA, Inc.'s representatives to issue the stop-payment order was not made until 12 days after the check had been written and mailed, and then only after receiving oral notice from plaintiff that the distributorship agreement would not be renewed. Accordingly, the plaintiff has failed to establish that it is entitled to any relief under Count III of its complaint.

For the foregoing reasons, judgment is hereby entered in favor of plaintiff, Stoutco, Inc., and against defendant, AMMA, Inc., on Count II of plaintiff's complaint in the principal sum of Thirty-seven Thousand Dollars ($37,000.00), plus interest at the rate of eighteen percent (18%) per annum from March 2, 1983 until payment is made in full together with court costs and other costs of collection including reasonable attorney's fees. SO ORDERED.