TANGLEWOOD LAND COMPANY, INC. v. JAMES E. WOOD AND FLORENCE G. WOOD

No. 7814DC349

(Filed 6 March 1979)

1. **Courts § 21.7 — contract governed by laws of state where made**

  Matters bearing upon the execution, interpretation, and validity of a contract are determined by the law of the place where it is made, that is, where the last act to make a binding contract took place; therefore, Virginia law governed in this case since the contracts and promissory notes were executed by all parties in Virginia; the papers dealt with real property located in

Virginia; plaintiff was a Virginia corporation, though domesticated in N.C.; and the contracts expressly provided that they should be construed according to the laws of Virginia.

2. **Contracts § 4.1— mutual promises to buy and sell land—consideration adequate**

Under the law of the place where the contract in question was made, Virginia, the mutual promises to buy and sell land afforded reciprocal considerations and constituted a valid contract binding upon both parties.

3. **Vendor and Purchaser § 1— right to mortgage and prior sale retained by seller—buyer protected**

Provisions in contracts for the sale of land that seller could mortgage the property or make a prior sale did not make the contracts "totally one-sided in favor of plaintiff," since Virginia law protected defendants by (1) requiring plaintiff seller, who promised to convey a "special warranty deed," to convey title free and clear of any and all claims against himself, and (2) permitting vendee, upon breach of the contract to convey by vendor, to sue for specific performance or for the breach of contract.

4. **Vendor and Purchaser § 4— contract to convey special warranty deed—title not unconscionable**

Defendants' contention that the very nature of the title plaintiff contracted to convey upon payment of the purchase price was unconscionable was without merit since plaintiff promised to convey a "special warranty deed" which would effectively transfer a fee simple interest in the real estate.

5. **Contracts § 6— contract to convey land—inexperienced buyers—contract not against public policy**

In an action to recover the balance due upon contracts for the sale of land, defendants' contention that the contracts and promissory notes were in contravention of public policy and unfair to defendants because they were not experienced in the analysis of legal documents and did not perceive the significance of many of the terms and conditions contained in the agreements was without merit, since there was no evidence or argument that defendants did not understand fully what they were doing or that they did not have the opportunity to have the paperwritings examined and explained to them by someone more experienced than they.

APPEAL by defendants from *Gantt, Judge.* Judgment entered 30 November 1977 in District Court, DURHAM County. Heard in the Court of Appeals 29 January 1979.

On 20 June 1976, defendants entered into two executory contracts with plaintiff for the sale of land and executed two promissory notes payable to plaintiff, which is a Virginia corporation, domesticated in North Carolina. The real estate involved is located in Virginia, and the paperwritings were executed there. Defendants were residents of Durham County, North Carolina.

Under the contracts, defendants agreed to buy and plaintiff agreed to sell designated real estate for a sum certain. The "total of payments" was to be paid in 84 consecutive monthly installments as "evidenced by the promissory note attached. . . ." Both the contracts and promissory notes provided that plaintiff could declare all remaining installments immediately due and payable upon default by defendants in any payment. Under the contracts, plaintiff retained a security interest in the property and agreed, upon receipt of all payments under the notes, to deliver a "special warranty deed" to defendants.

Plaintiff alleged that defendants were in default on 25 February 1977. Plaintiff, therefore, declared the entire obligation under the contracts and notes due and payable and brought this action for the balances.

Defendants did not deny execution of the paperwritings but filed a counterclaim. They alleged that the contracts and notes were illusory and void and of no force and effect because of a total failure of consideration. They prayed for a refund of the monies they had already paid.

The case was tried without a jury. At the close of plaintiff's evidence, defendants made a "motion for a directed verdict in favor of the defendants' counterclaim and against the plaintiff on the ground that it is required as a matter of law." The motion was renewed at the close of all the evidence. The motions were denied.

Applying Virginia law, the trial judge made findings of fact and conclusions of law and entered judgment directing that defendants pay the balance due on the notes and contracts and that plaintiff deliver to defendants a deed conveying the property. Defendants made other post-verdict motions which were denied. Defendants appealed.

*C. Barrett Graham, for plaintiff appellee.*

*Clayton, Myrick & Oettinger, by Kenneth B. Oettinger, for defendant appellants.*

CARLTON, Judge.

Defendants assign as error the denial by the trial court of their motions for a directed verdict at the close of plaintiff's

evidence and at the close of all the evidence, and the denial of their post-verdict motions for a new trial and for judgment notwithstanding the verdict.

Directed verdicts are appropriate only in jury cases. *Bryant v. Kelly*, 279 N.C. 123, 181 S.E. 2d 438 (1971). In nonjury civil cases, the appropriate motion by which a defendant may test the sufficiency of the plaintiff's evidence to show a right to relief is a motion for involuntary dismissal under G.S. 1A-1, Rule 41(b), N.C. Rules of Civil Procedure. *Higgins v. Builders and Finance, Incorporated*, 20 N.C. App. 1, 200 S.E. 2d 397 (1973). This case was tried without a jury. Though defendants' motions were incorrectly designated, we shall treat them as having been motions for involuntary dismissal under G.S. 1A-1, Rule 41(b). *Neff v. Coach Co.*, 16 N.C. App. 466, 192 S.E. 2d 587 (1972).

By introducing evidence, defendants waived the right to have reviewed on appeal the question whether their motion for involuntary dismissal under G.S. 1A-1, Rule 41(b) made at the close of plaintiff's evidence was erroneously denied. *Redevelopment Comm. of Greenville v. Unco, Inc.*, 23 N.C. App. 574, 209 S.E. 2d 841 (1974), *cert. denied*, 286 N.C. 415, 211 S.E. 2d 795 (1975). Moreover, G.S. 1A-1, Rule 41(b) does not provide for a motion for involuntary dismissal made at the close of all the evidence. *Reid v. Midgett*, 25 N.C. App. 456, 213 S.E. 2d 379 (1975). However, the fact that defendants made such a motion which is not sanctioned by the rules, and that the trial judge ruled thereon, is of no real consequence since the judge entered a judgment on the merits by making findings as required by G.S. 1A-1, Rule 52. *Castle v. B. H. Yates Co., Inc.*, 18 N.C. App. 632, 197 S.E. 2d 611 (1973).

In spite of the procedural deficiencies noted above, we shall pass on the merits of the questions appellants seek to raise by this appeal. Defendants contend that the trial judge erred in applying Virginia law in the trial of this action. We disagree.

[1] The North Carolina rule, concerning conflicts of law in contract cases, is well settled. Our rule is that the *lex loci celebrationis* (also referred to as the *lex loci contractus*)—the substantive law of the State where the last act to make a binding contract takes place—controls all aspects of the contract. 48 N.C.L. Rev. 243 at 275. Our Supreme Court has held on numerous occasions that matters bearing upon the execution, interpretation, and the

validity of a contract are determined by the law of the place where it is made. Moreover, the law of the place where the contract is made is *prima facie* that which the parties intended and such law ought therefore, to prevail, in the absence of circumstances indicating a different intention. *Fast v. Gulley*, 271 N.C. 208, 155 S.E. 2d 507 (1967); *Roomy v. Allstate Insurance Company*, 256 N.C. 318, 123 S.E. 2d 817 (1962).

In the present case, the contracts and promissory notes were executed by all parties in the Commonwealth of Virginia. The papers dealt with real property located in Virginia and the plaintiff is a Virginia corporation, though domesticated in the State of North Carolina. Moreover, the contracts expressly provided that "this contract shall be construed according to the laws of the Commonwealth of Virginia."

We, therefore, hold that the substantive issues in the present case are to be resolved under the law of Virginia, of which we are required to take judicial notice by G.S. 8-4. North Carolina law, however, governs the procedural matters. *Tennessee-Carolina Transportation, Inc. v. Strick Corp.*, 286 N.C. 235, 210 S.E. 2d 181 (1974).

Defendants next contend that the contracts and promissory notes are, as a matter of law, ". . .unconscionable, illusory, totally lacking in consideration and in contravention of the public policy of this State and are, therefore, null and void and of absolutely no force and effect as to the defendants." On this basis, defendants argue their right to rescind the agreements and recover what they have paid to the plaintiff. We do not agree.

[2] We first address the question of consideration. Under Virginia law, a naked offer to sell land, without consideration, may become binding by an acceptance before withdrawal, the purchaser's promise implied in his acceptance being a consideration for the seller's promise. *Turner v. Hall*, 128 Va. 247, 104 S.E. 861 (1920). Moreover, a promise by the seller to convey, in return for a promise by the buyer to pay the unpaid remainder of the purchase price, furnishes a valid and sufficient consideration to bind the buyer and his estate to pay the remainder of the purchase money. *Midkiff v. Glass*, 139 Va. 218, 123 S.E. 329 (1924). In the present case, we hold that the mutual promises to buy and sell afforded reciprocal considerations and constituted a valid contract binding upon both parties.

[3]  We next address the question of whether the contracts and promissory notes were "totally one-sided in favor of the plaintiff", unconscionable and illusory.

Paragraph twelve of the contracts provides in part as follows: "Buyer expressly consents that Seller and its grantees and/or assigns may mortgage said premises and the rights of Seller and Buyer shall be subordinate to the lien of all such mortgages, whether the same shall be given hereinbefore or hereinafter."

Defendants argue that this paragraph is inequitable in that it allows the plaintiff to mortgage the property regardless of the existence of any interest of the defendants. Defendants state that the net effect of the paragraph is that if the mortgage is foreclosed, the defendants in all likelihood, would, through no fault of their own, lose all monies which they had paid to the plaintiff under the terms of the contracts. We do not agree. Under paragraph four of each contract, plaintff agrees to convey title in each lot to the defendants free of blanket encumbrances by a "special warranty deed" upon payment of the full purchase price. Under Virginia law, a "special warranty deed" requires that the grantor convey title free of any and all claims against himself. Plaintiff is, therefore, merely maintaining its right to encumber the legal title still in its possession, subject to its obligation under the contract to convey a marketable title to the property free of all claims against itself to the defendants upon payment of the purchase price. If for any reason the plaintiff would be unable to convey an unencumbered title to the property to defendants, plaintiff would then be answerable in damages to the defendants for breach of contract.

Paragraph six of the contracts provides as follows:

Buyer agrees that in the event of prior sale of said lot(s), this agreement and note shall be cancelled and voided without further liability to either party, except for refund of all payments made hereunder to Buyer, and to accept the decision of Seller without recourse, that said prior sale of lot(s) has been made.

Defendants argue that this paragraph is ambiguous as to whether it refers to a sale made prior to the date of the contracts in question or prior to the time when the defendants have paid the en-

tire purchase price to the plaintiff and the plaintiff has conveyed title to the defendants to consummate the sale. Defendants argue that the effect of this provision is to give the plaintiff the right to sell and convey the property to another purchaser at any time up to the time the entire purchase price has been paid. Defendants' contention is without merit, because they are fully protected by Virginia law. The rule is well established in that Commonwealth that when a vendor breaches a contract to convey, the vendee is entitled to sue for specific performance or for breach of contract. In case of the latter, the vendee is entitled to the return of all purchase money plus interest paid to the vendor prior to the breach, said monies being the measure of damages for failure to convey. *Davis v. Beury*, 134 Va. 322, 114 S.E. 773 (1922). Moreover, in paragraph six, the defendants expressly agree to accept refund of all payments made to plaintiff in the event of any prior sale of the real estate.

Defendants also argue that various other paragraphs of the contracts are unfair. Paragraph nine provides that the contracts may not be assigned or conveyed by the defendants without the prior written consent of the plaintiff. Paragraph eleven provides that the plaintiff may assign and/or grant a security interest in its rights under the agreements and notes and that the assignee's rights shall be free from all defenses, set-offs or counterclaims which the defendants might be entitled to assert against the plaintiff and paragraph two provides that the defendants shall pay all taxes and assessments on the lots and provide a hazard insurance policy insuring the improvements located on the premises, designating the plaintiff as loss payee and for such amount as the plaintiff or its assigns approve. Paragraph five requires that the defendants assume all risks of loss or damage to the lots by any means whatsoever and paragraph three provides for the plaintiff's remedies in the event the defendant should default on any of the provisions in the agreements or promissory notes. We have carefully examined each of these paragraphs and find them to be in compliance with the prevailing Virginia law and not unfair to defendants.

[4] Defendants also contend that the very nature of the title plaintiff contracted to convey upon payment of the purchase price is unconscionable. Paragraph four of the contracts provides in part as follows:

(Seller) . . . agrees upon receipt of all payments provided herein (said payments to be made to the assigns of Sellers upon notice to Buyer) to *record* (if fee is charged Buyer therefor) *and deliver a conveyance* of said Lot(s) to Buyer consisting of a SPECIAL WARRANTY DEED, free of any blanket encumbrance, . . . .

Defendants argue that this provision is unfair in that plaintiff is not required to convey to defendants a *general* warranty deed, warranting the title against the claims and demands of all persons whomsoever. Defendants state that it is conceivable that the title conveyed would be subject to an encumbrance other than a blanket encumbrance, thereby rendering the value of the title conveyed to the defendants worthless. We find no merit in this contention.

A "special warranty deed" is a creation of the Virginia Legislature. Va. Code, 55-69. That statute provides that a deed under a special warranty is one under which the grantor agrees ". . . to forever warrant and defend such property unto the grantee, his heirs, personal representatives and assigns, against the claims and demands of the grantor, and all persons claiming or to claim by, through or under him."

Title to realty may be effectually conveyed by either a special or a general warranty deed. A covenant of general warranty does not enlarge the title conveyed and does not determine the character of the title. 26 C.J.S., Deeds, § 117, p. 944. The only distinction we discern under Virginia law between a deed of general warranty and a deed of special warranty is the nature of the warranty itself, not the property interest conveyed. The special warranty deed effectively transfers a fee simple interest in the real estate. Hence, paragraph four of each contract requires plaintiff to convey to defendants marketable title to the real estate, constituting valid consideration for the purchase price.

[5] We also address defendants' argument that the contracts and promissory notes were generally in contravention of public policy and unfair to defendants since the defendants were not experienced in the analysis of legal documents and did not perceive the significance of many of the terms and conditions contained in the agreements. The authorities cited by defendants with respect to

the paperwritings in question do not support this contention, nor does our research disclose any authority in support of defendants' position.

A sound public policy requires the enforcement of contracts deliberately made which do not clearly contravene some positive law or rule of public morals. Since the right of private contract is "no small part of the liberty of the citizen", the usual and most important function of courts is to enforce and maintain contracts rather than to enable parties to escape their obligations on the pretext of illegality. A contract is not unenforceable merely because it may have been unwise on the part of one of the parties. 17 C.J.S., Contracts, §§ 189, 190, pp. 981, 982. As our own Supreme Court has stated: "Liberty to contract carries with it the right to exercise poor judgment as well as good judgment." *Troitino v. Goodman*, 225 N.C. 406, 414, 35 S.E. 2d 277, 283 (1945). We also note that there are no allegations of fraudulent misrepresentations and that the defendant, James E. Wood, submitted a letter into evidence at the trial below indicating his ability to read and write. There is also no evidence or argument that defendants did not have the full opportunity to inspect the paperwritings before executing them. While plaintiff's agent was undoubtedly more experienced than defendants in transactions such as these, there is no evidence or argument that defendants did not understand fully what they were doing or that they did not have the opportunity to have the paperwritings examined and explained to them by someone more experienced than they.

We have also examined the defendants' remaining contentions, which were not properly brought forth in their brief under appropriate assignments of error as required by Rule 28, N.C. Appellate Rules, and find they are without merit. In summary, we find that there was sufficient evidence for the trial court to find, as it did, that the parties entered into two valid and enforceable executory land sale contracts, that the defendants breached the contracts and that the plaintiff was entitled to enforce the terms of the contracts by the lawsuit.

We have previously discussed our treatment of defendants' motions for a directed verdict as motions for involuntary dismissal. Plaintiff's evidence was abundant to establish its right to relief and the trial court properly denied the motions.

Defendants' post-verdict motion for a new trial is not reviewable on appeal in the absence of abuse of discretion. *Glen Forest Corp. v. Bensch*, 9 N.C. App. 587, 176 S.E. 2d 851 (1970). We find no abuse of the trial court's discretion in the case before us and denial of the motion was proper.

Finally, defendants' motion for judgment notwithstanding the verdict was improperly made. The motion for judgment notwithstanding the verdict must be preceded by a motion for a directed verdict which, as previously stated, is improper in non-jury trials. It is obvious that the motion for judgment notwithstanding the verdict is inappropriate when addressed to the trier of fact.

For the reasons stated, the judgment of the court below is

Affirmed.

Chief Judge MORRIS and Judge MARTIN (Harry C.) concur.