Wayne R. GRIES, Plaintiff,

v.

ZIMMER, INC., Defendant.

Michael J. MORAN, Plaintiff,

v.

ZIMMER, INC., Defendant.

Nos. C–C–87–0576–P, C–C–87–0577–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Feb. 28, 1989.

Louis L. Lesesne, Jr., Gillespie, Lesesne & Connette, and Richard A. Vinroot, Robinson, Bradshaw & Hinson, Charlotte, N.C., for plaintiffs.

Martin N. Erwin, Julie C. Theall, Smith Helms Mulliss & Moore, Greensboro, N.C., for defendant.

MEMORANDUM AND ORDER

ROBERT D. POTTER, Chief Judge.

## I. PRELIMINARY STATEMENT

THIS MATTER is before the Court on Defendant's Motion for Partial Summary Judgment, filed July 8, 1988. On January 24, 1989, a hearing was conducted on this motion, the undersigned presiding. Attorneys Louis L. Lesesne, Jr., Richard A. Vinroot, and Sam Walker appeared at the hearing to argue on Plaintiffs' behalf, and attorneys Martin N. Erwin and Julie C. Theall appeared on Defendant's behalf. After hearing the arguments of counsel, the undersigned took the motion under advisement. For the reasons that follow, this Court will grant Defendant's Motion for Partial Summary Judgment and will dismiss Counts 2 and 3 of Plaintiffs' Complaints.

## II. NATURE OF THE CASE

These cases have been consolidated for trial. Plaintiffs were employed by Defendant. On April 6, 1987, Defendant terminated Plaintiffs' employment. Plaintiffs have filed two, substantially similar, three-count complaints. In Count 1 of both Complaints, Plaintiffs allege age discrimination, a violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.A. §§ 621–634 (West 1985 & Supp. 1988) ("ADEA"). This Court's subject-matter jurisdiction over Plaintiffs' age discrimination claims is based upon 28 U.S.C.A. § 1331 (West Supp.1988) (federal question), and 28 U.S.C.A. § 1343(a)(4) (West Supp. 1988) (civil rights). In the present motion, however, Defendant is seeking summary judgment only on Counts 2 and 3 of Plaintiffs' Complaints, and, therefore, this Court will not discuss the facts or the law relating to Plaintiffs' age discrimination claims.

In Counts 2 and 3 of both Complaints, Plaintiffs allege breach of contract. Specifically, Plaintiffs allege that Defendant induced each of them to move from their state of residence, Virginia, to another state, Indiana, by assurances that they would be employed with Defendant for as long as they adequately performed their jobs. Plaintiffs contend that their moves to Indiana constitute sufficient independent consideration to make their employment with Zimmer terminable only for cause. Plaintiffs conclude that Defendant's termination of their employment was done without cause and, thus, breached their employment agreements. In addition, Plaintiffs allege that certain provisions of Defendant's employee handbook—which provided for "bumping" of more junior employees in other positions during reductions-in-force—guaranteed to them permanent employment. Plaintiffs contend that Defendant's termination of their employment breached this portion of their employment agreements. Plaintiffs are seeking damages and injunctive relief on their breach of contract claims.

This Court has diversity jurisdiction, 28 U.S.C.A. § 1332(a) (West Supp.1988), over Plaintiffs' breach of contract claims because the parties are citizens of different states and the amount in controversy exceeds $10,000.00.

Defendant denies, in its Answer, having made any representations to Plaintiffs regarding "permanent employment" and denies that Plaintiffs were guaranteed permanent employment by any provisions of Defendant's employee handbook. Nevertheless, Defendant contends in its Motion for Partial Summary Judgment that even if Plaintiffs' allegations are taken as true, for the purposes of the motion, they must fail as a matter of law.

## III. QUESTIONS PRESENTED

(1) Under North Carolina's choice of law rules, which this Court must apply to Plaintiffs' diversity claims, does North Carolina's law or Indiana's law apply to Counts 2 and 3 of Plaintiffs' complaints, which allege breach of contract?

(2) If Indiana's law governs, then should this Court refuse to apply it because it is purportedly contrary to North Carolina's settled public policy?

(3) Since Plaintiffs did not have an employment agreement for a definite amount of time, were Plaintiffs merely "at-will" employees, under the applicable state's law, who could be discharged for good cause, bad cause, or no cause at all without giving rise to an action for damages *or* did Plaintiffs furnish sufficient independent consideration to support a promise of permanent employment?

(4) Did statements in Defendant's employee handbook become, under the applicable state's law, part of Plaintiffs' employment agreements with Defendant and guarantee to them "bumping" rights?

## IV. STATEMENT OF FACTS [1]

The material facts, taken in the light most favorable to the Plaintiffs, the non-moving parties, are as follows:

### A. Plaintiffs

Michael J. Moran ("Moran") is a citizen and resident of Mecklenburg County, North Carolina. Wayne R. Gries ("Gries") is a resident and citizen of Mecklenburg County, North Carolina.

### B. Defendant

Zimmer, Inc. ("Zimmer") is a Delaware corporation, and it is a wholly owned subsidiary of Bristol–Myers. Zimmer manufactures and retails orthopedic devices and

---

**1.** It is interesting to note that in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court recognized that Rule 56 of the Federal Rules of Civil Procedure does *not* require the trial judge to make findings of fact, although a statement of facts may be helpful to a reviewing court. *Id.* at 2511 & n. 6. Thus, this Court will provide, from its review of the entire record, a statement of facts, but such statement of facts is not intended to be exhaustive. For the purposes of the present motion, the parties have agreed upon the material facts. *See* Brief in Support of Defendant's Motion for Summary Judgment at 2; Plaintiffs' Consolidated Brief in Opposition to Motion for Summary Judgment at 1.

related surgical instruments and supplies. (Davis Depo. at 3). Zimmer's principal place of business is in Warsaw, Indiana, but it also has offices and plants in several other states, including California, Colorado, Georgia, New York, Ohio, Texas, and North Carolina. (Davis Depo. at 4). Zimmer employs in excess of three thousand people. (Davis Depo. at 4).

## C. The Present Action

### (1) *Moran*

From 1973 until 1975, Moran worked as the assistant division controller for Crawford Manufacturing Company ("Crawford"), in Richmond, Virginia. (Moran Aff. at 1; Moran Depo. at 7). In 1975, Moran's immediate supervisor told him that he should seek other employment because new owners were going to take control of Crawford. (Moran Depo. at 18–19).[2]

Zimmer interviewed Moran for a position.[3] At the time Moran accepted his position with Zimmer in Indiana, he was told that he was being hired as a "permanent employee who would be removed only for good cause," (Moran Aff. at 1), and that as long as he did his job and performed well he would not have to worry about continued employment. (Moran Depo. at 17–18). On September 15, 1975, Moran began his employment with Zimmer in Warsaw, Indiana, as the manufacturing controller. (Moran Depo. at 7). To take this job, Moran had to quit his job with Crawford and move from Richmond to Warsaw.

In 1980, Zimmer transferred Moran to North Carolina to work as the division controller for Zimmer's Patient Care Systems Division, a division newly established at that time. (Moran Depo. at 7). At the time of the transfer, Moran was assured that all the benefits available to him at Zimmer's operation in Warsaw would be applicable to his new job in North Carolina. (Moran Depo. at 85–86). In 1984, Moran became Vice President of Operations for Zimmer's Patient Care Systems Division.

### (2) *Gries*

From 1973 until 1979, Gries worked as the vice president and controller for United Leasing Corporation ("United Leasing"), in Richmond, Virginia. (Gries Depo. at 5; Gries Declar. at 1).

In 1978, Gries learned that Zimmer had two financial-oriented jobs: budget director and international controller. (Gries Declar. at 2). Gries was at that time looking for a new job because United Leasing was making some changes in its operations. (Gries Declar. at 2). Although Gries felt that his job was secure at United Leasing, he was attracted to Zimmer because he had learned that Zimmer was generous towards its employees. (Gries Declar. at 2). Gries applied for the two financial positions, and in December 1978 Zimmer's staffing director, Jim Steger ("Steger"), called him for an interview. (Gries Declar. at 2).

In January 1979, Steger interviewed Gries. Steger said at the interview that Gries' potential job with Zimmer might be the last job he would ever have "because Zimmer expected its employees to remain with them to retirement." (Gries Declar. at 2). In addition, Steger said that Zimmer expected loyalty from its employees and reciprocated by maintaining them on a "permanent basis." (Gries Declar. at 2). Further, Steger told Gries that Zimmer had never had a layoff since 1927 and that people who worked for Zimmer would be there until retirement because they would only be fired for incompetence or for doing something illegal. (Gries Declar. at 3). Other Zimmer employees, including Russ

---

**2.** Specifically, Moran testified that his immediate supervisor told him that he should look for other employment because the new owners might put Moran into his supervisor's position; apparently, Moran's supervisor, to save his own job, contemplated firing Moran before the new owners arrived. (Moran Depo. at 18–19).

**3.** Moran has stated in his affidavit that Zimmer "actively recruited" him. (Moran Aff. at 1).

Moran has failed, however, to support with specific facts this characterization of Zimmer's employment efforts. He simply states that he was promised he would be a "permanent employment who would be removed only for good cause." There is no evidence that Zimmer sought Moran because he possessed some special and hard-to-find qualities or skills.

Schrode, director of profit planning, David Berry, vice president of finance, and Dick Milbern, corporate controller, made similar comments to Gries concerning job security at Zimmer. (Gries Declar. at 3; Gries Depo. at 6–7).

Gries relied on these assurances when he made his decision to leave United Leasing to join Zimmer. (Gries Declar. at 3). In 1979, Gries quit his job with United Leasing, sold his house in Richmond, withdrew his children, ages 12 and 14, from school, and moved to Indiana with his family to join Zimmer as the corporate budget director of the corporate staff. (Gries Declar. at 3; Gries Depo. at 6).

In 1984, Zimmer transferred Gries to North Carolina to work in Zimmer's Patient Care Systems Division. (Gries Declar. at 4). Gries was told at the time of his transfer to North Carolina that he could anticipate "permanent employment" with Zimmer. (Gries Declar. at 4). Relying on these assurances, Gries and his family moved to North Carolina to work as the Vice President of Finance for Zimmer's Patient Care Systems Division. (Gries Declar. at 4).

### (3) *The Reduction–In–Force*

When they started their employment with Zimmer, each Plaintiff received Zimmer's employee handbook ("the Handbook"). (Moran Aff. at 1; Gries Depo. at 8–9; Plaintiffs' Consolidated Brief in Opposition to Defendant's Motion for Summary Judgment, Exh. A). The Handbook addresses all aspects of the employment relationship, and, in particular, it states,

> If it should become necessary to reduce our work force, the following procedure will apply:
>
> ....
>
> 4. Employees whose jobs have been eliminated may "bump" those most junior employees in the same job title, regardless of department.

Plaintiffs' Brief in Opposition to Def't's Motion for Summary Judgment, Exh. A at 20–20; Moran Aff. at 1 (explaining that phrase "Applies to hourly workers only" on page 20–20 of Handbook was added after

Moran was terminated). Moran relied on the Handbook and considered it to be a part of his employment contract with Zimmer. (Moran Aff. at 1).

From 1984 until 1987, the top management of the Zimmer's Patient Care Systems Division consisted of Robert Teskey ("Teskey"), who was the President, and Plaintiffs. On April 6, 1987, Ron Davis ("Davis"), President of Zimmer's U.S. Division, announced to all employees that a corporate reorganization was being undertaken for economic reasons to reduce overhead expenses, and, therefore, the positions of Moran, Gries, and Teskey would be eliminated. Zimmer's Patient Care Systems Division was to be consolidated with Zimmer's Snyder Laboratories Division in Ohio. No other positions were eliminated on April 6, 1987, as a result of the reorganization, but other positions have been eliminated since then.

Zimmer announced that it would provide assistance to Gries and Teskey in finding new positions and denied Moran's request to be reinstated to his old position. At the time of Plaintiffs' termination, there were lower rated positions held by employees with less seniority than Plaintiffs, but Zimmer did not offer to replace any such employees with Plaintiffs.

## V. CHOICE OF LAW

From the above-recited facts, it appears that this Court is presented, at the outset, with a choice of law problem. This Court, sitting in diversity, must apply to Plaintiffs' contract claims the forum state's substantive law, 28 U.S.C.A. § 1652 (West 1966) ("Rules Decision Act"); *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including its choice of law rules, *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–497, 61 S.Ct. 1020, 1021–1022, 85 L.Ed. 1477 (1941); *Kaplan v. RCA Corp.,* 783 F.2d 463, 465 (4th Cir. 1986); *Boone v. Aeronca,* 669 F.Supp. 1353, 1359 (W.D.N.C.1987) (Potter, C.J.). Therefore, this Court must apply North Carolina's substantive law to Plaintiffs' contract claims unless North Carolina's

choice of law rule requires the application of another state's law.

The parties characterize Counts 2 and 3 of Plaintiffs' Complaints as "contract" claims, and this Court readily agrees with such a characterization. The parties, however, differ on their characterizations of the types of contract issues presented.

Defendant contends in its briefs that Indiana contract law governs *all aspects* of Plaintiffs' contract claims because Indiana, the place of the making of the contracts, is the forum to be selected under the applicable North Carolina choice of law rule.[4] Plaintiffs assert that the issues raised in Counts 2 and 3 of Plaintiffs' Complaints are matters of contract *performance.* Citing *Bernick v. Jurden,* 306 N.C. 435, 442, 293 S.E.2d 405, 410 (1982) (U.C.C. case), Plaintiffs contend that North Carolina's law applies to Plaintiffs' contract claims because North Carolina was the place of Zimmer's nonperformance of the employment contracts. The *Bernick* court stated, in dicta, "[T]he traditional rule is *matters of performance* and damages for nonperformance are governed by the law of the place of performance." *Id.* (emphasis added). Plaintiffs argue that their contract claims are based, at least in part, on Zimmer's failure to *perform,* in North Carolina, its agreements with them.

This Court is of the opinion that the parties have mischaracterized the types of contract issues raised in Counts 2 and 3 of Plaintiffs' Complaint. Defendant has, at times, too broadly characterized these issues as being related to all aspects of Plaintiffs' employment contracts, including matters of performance. Plaintiffs, on the other hand, have incorrectly characterized these issues as being related only to matters of performance. This Court is of the opinion that the issues raised in Counts 2 and 3 of Plaintiffs' Complaint are simply, and solely, matters of contract *validity* and *interpretation.*

Plaintiffs have two kinds of contract claims. First, Plaintiffs contend that they were to be employed by Zimmer for as long as they performed their work adequately and would be discharged only for cause. Second, Plaintiffs contend that they have "bumping" rights, as described in Zimmer's employee handbook. Plaintiffs' claims are premised upon the *existence* of enforceable employment contracts with Zimmer. Plaintiffs claim that these employment contracts had certain terms, including termination provisions—"for good cause only"—and contingency provisions to be used during reductions-in-force—the "bumping rights." Whether employment contracts with such terms exist or not is a question of contract validity or interpretation or possibly both. The question of performance will be, and can only be, presented to this Court when it is established that the employment contracts with the disputed terms existed. Therefore, as a preliminary matter, this Court must determine, using the appropriate state's law, whether Plaintiffs have enforceable employment contracts that are terminable only for cause and whether the "bumping" rights described in Zimmer's employee handbook are part of the employment contracts. These preliminary questions are matters of contract validity and interpretation only; they are not matters of contract performance.

As to matters relating to contract execution, interpretation, and validity, North Carolina's courts generally apply the choice of law rule of lex loci contractus—the law of the place where the contract was made. *E.g., Davis v. Davis,* 269 N.C. 120, 152 S.E.2d 306 (1967); *Cocke v. Duke University,* 260 N.C. 1, 8, 131 S.E.2d 909, 913 (1963); *Roomy v. Allstate Ins. Co.,* 256 N.C. 318, 123 S.E.2d 817 (1962); *Cannaday v. Atlantic Coast Line R.R.,* 143 N.C. 439, 55 S.E. 836 (1906); *see Tanglewood Land Co., Inc. v. Byrd,* 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980); *Wallace Butts Ins. Agency, Inc. v. Runge,* 68 N.C.App. 196, 199, 314 S.E.2d 293, 295 (1984) (employment agreement governed by lex loci contractus); *Tanglewood Land Co., Inc. v. Wood,* 40

**4.** To be fair, it should be noted that Defendant argued at the January 24th hearing that the issue is one of contract formation.

N.C.App. 133, 137, 252 S.E.2d 546, 550 (1979); *Fried v. North River Ins. Co.,* 710 F.2d 1022, 1024 (4th Cir.1983); *see also Scudder v. Union Nat'l Bank,* 91 U.S. 406, 412–413, 23 L.Ed. 245 (1875) (giving "traditional" choice of law rules for contracts). Under North Carolina law, a contract is made where the last act necessary for the contract's validity occurred. *Fast v. Gulley,* 271 N.C. 208, 212, 155 S.E.2d 507, 510 (1967) (citing *Bundy v. Commercial Credit Co.,* 200 N.C. 511, 157 S.E. 860 (1931)); *Clarkson v. Finance Co. of America,* 328 F.2d 404, 407 (4th Cir.1964). "Moreover, the law of the place where the contract is made is *prima facie* that which the parties intended and such law ought, therefore, to prevail in the absence of circumstances indicating a different intention." *Tanglewood Land Co., Inc. v. Wood,* 40 N.C.App. at 137, 252 S.E.2d at 550 (citing *Fast v. Gulley,* 271 N.C. 208, 155 S.E.2d 507 (1967)).

This Court is of the opinion that North Carolina's choice of law rules require this Court to apply Indiana law to all questions regarding the validity and interpretation of Plaintiffs' employment contracts with Zimmer. It is undisputed that the contracts were made in Indiana when Plaintiffs accepted Zimmer's offers. There are no circumstances in the record indicating that the parties intended some other state's law to govern the validity and interpretation of the contracts. Further, as Defendant has noted, Indiana was the place of performance at the time the employment contracts were made. When Plaintiffs entered into their employment contracts with Zimmer—Moran in 1975 and Gries in 1979—they fully expected that they would be employed, at least for some time, at Zimmer's Indiana location. When Moran was hired in 1975, the North Carolina Patient Care Systems did not even exist. (Moran Depo. at 10). Moran did not move to Charlotte, North Carolina until 1980, five years later. Similarly, Gries worked for Zimmer in Indiana for five years—1979 through 1984. Gries did not move to North Carolina until 1984. (Gries Depo. at 56–57). These undisputed material facts sufficiently establish that the parties probably intended, at the time of the making of the employment contracts, for Indiana law to govern Plaintiffs' employment contracts with Zimmer. *See Tanglewood Land Co. v. Wood,* 40 N.C. App. at 137, 252 S.E.2d at 550. At the time the contracts were made, the parties could not have possibly anticipated that the Plaintiffs would be transferred to any particular state—let alone North Carolina. Therefore, it is more probable that the parties intended Indiana law to govern the contract,. if they intended the law of any state to govern at all.

Plaintiffs assert that a "wooden 'place of contracting' " choice of law rule makes little sense in the context of a large corporation, such as Zimmer, with a mobile workforce and operations in several states. Plaintiffs further contend that North Carolina has the most significant relationship to, and is most "interested in," the conditions of Plaintiffs' employment with Zimmer in North Carolina. Finally, Plaintiffs argue that, assuming the application of Indiana law will deprive Plaintiffs of their remedy, this Court must not apply Indiana law because North Carolina's courts will not give effect to, or enforce, foreign law or rights contrary to North Carolina's settled public policy.

This Court will not address at length these points raised by Plaintiffs because they are all without merit. First, there is nothing "wooden" about a choice of law rule that looks to the place of the making of the contract when deciding matters of validity, interpretation, and construction. Zimmer's status as a corporation with operations in several states does not alter this conclusion. Instead, this Court is of the opinion that, in the absence of a contractual choice of law provision, lex loci contractus is the only choice of law rule that makes sense when employment contracts of a corporation with multi-state contacts are at issue. Certainly in the present case the parties did not expect their mutual rights and obligations under the employment contracts to depend upon Plaintiffs' possible future relocations to other states in which Zimmer operates. Second, *Indiana,* and not North Carolina, is the state with the

most significant contacts with Plaintiffs' employment contracts. Zimmer is headquartered in Indiana; Plaintiffs went to Indiana to obtain their jobs and to make their employment contracts; and Plaintiffs initially worked for Zimmer in Indiana. While it is true that North Carolina was the place where the Plaintiffs lived and worked at the time of their discharge, this single contact with North Carolina is entirely insufficient to warrant the use of North Carolina's law in place of Indiana's law. Third, and finally, this Court does not believe the use of Indiana's law in the present case is prevented by North Carolina's settled public policy. In *Boudreau v. Baughman*, 322 N.C. 331, 368 S.E.2d 849 (1988), the North Carolina Supreme Court explained the limits of the public policy exception in the following way:

> It is true that we have held that foreign law or rights based thereon will not be given effect or enforced if opposed to the settled public policy of the forum. However, the mere fact that the law of the forum differs from that of the other jurisdictions does not mean that the foreign statute [or law] is contrary to the public policy of the forum. To violate public policy, it must violate some prevalent conception of good morals or fundamental principle of natural justice or involve injustice to the people of the forum state. This public policy exception has generally been applied in cases such as those involving prohibited marriages, wagers, lotteries, racing, gaming, and the sale of liquor.

*Id.* at 341–342, 368 S.E.2d at 857–858 (citations omitted). This Court does not believe the types of concerns enunciated in *Boudreau* prevent the application of Indiana's law to questions regarding the validity and interpretation of Plaintiffs' employment contracts. Moreover, while it is true that North Carolina's courts can refuse to enforce contractual provisions that are contrary to public morals, positive legislation, or settled public policy, the validity and interpretation of contracts made in other states cannot be affected by North Carolina's employment contract laws because such laws have no extraterritorial opera-

tion. *See Bond v. Hume*, 243 U.S. 15, 20–21, 37 S.Ct. 366, 368, 61 L.Ed. 565 (1917). In other words, it is not possible, after the making of a contract and without the assent of the parties, for North Carolina's laws to add to, or alter, the terms the original contract.

In short, North Carolina's choice of law rules require this Court to apply Indiana contract law to Plaintiffs' contract claims when determining Defendant's Motion for Partial Summary Judgment.

## VI. SUMMARY JUDGMENT

### A. Standard of Decision

Although this Court must apply North Carolina's substantive law to Plaintiffs' diversity claims, federal law governs all questions of procedure. Rule 56(c) of the Federal Rules of Civil Procedure establishes the standard of decision this Court must use when determining Defendant's Motion for Partial Summary Judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).

Recently, the United States Supreme Court has had several occasions to construe the summary judgment standard established in Rule 56. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (antitrust conspiracy case); *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (libel action); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (asbestos related wrongful death action); *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1969) (alleged conspiracy to violate civil rights). These cases provide substantial guidance to this Court in its determination of Defendant's Motion for Partial Summary Judgment.

In *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Supreme Court noted:

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the non-moving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

*Id.* 106 S.Ct. at 1356 (emphasis in original; footnote and citations omitted; quoting Fed.R.Civ.P. 56).

Stated another way, it is Defendant's burden, as the moving party, to show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. If that burden has been met, then Plaintiffs, the non-moving parties, must establish that there are indeed genuine issues of material fact; usually this can be done by producing affidavits of persons with personal knowledge setting forth specific information to be offered at trial.

In *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court stated the following:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Id.*, 106 S.Ct. at 2552–53; *accord White v. Rockingham Radiologists, Ltd.*, 820 F.2d 98, 101 (4th Cir.1987).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; Rule 56 requires that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]he substantive law will identify which facts are material." *Id.* Thus, in the present case Indiana contract law will identify which facts are material.

It is worth noting that in *Anderson v. Liberty Lobby, Inc.* the Court held:

> [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.*, 106 S.Ct. at 2511. On the other hand, all reasonable favorable inferences from the pleadings and depositions are to be drawn in favor of the party opposing the motion for summary judgment. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *White*, 820 F.2d at 101.

Summary judgment is not a disfavored procedural shortcut; instead, it is a useful method for disposing of issues, or even cases, in a just, speedy, and inexpensive way.

**B. Defendant's Contentions**

Defendant contends that under Indiana law employment agreements that are not for a definite term are terminable at will unless the employee furnishes to the employer some independent consideration other than merely performing the required services. Defendant further contends that Plaintiffs' move from Virginia to Indiana did not constitute independent consideration. In addition, Defendant asserts that the alleged oral representations concerning permanent employment were too vague and indefinite to support a unenforceable contract. Finally, Defendant contends that in the absence of an employment agreement setting a term of employment for a definite term, the statements in the em-

ployee handbook are irrelevant—they are not sufficient to transform the employment agreement from an "at-will" arrangement to a permanent arrangement.

## C. Plaintiffs' Contentions

Plaintiffs contend that under Indiana law Plaintiffs were not terminable at will, and that Zimmer's promises of permanent employment were sufficiently definite. In addition, Plaintiffs contend that Plaintiffs' claims relating to Zimmer's employee handbook raise genuine issues of material fact.

## D. Discussion

### (1) *Breach of Contract*

■ There is nothing in the record indicating that the parties had written contracts with each other, so the parties must have entered into oral agreements, or contracts, by which Plaintiffs agreed to render service to Defendant for a specified consideration. *See Pearson v. Youngstown Sheet & Tube Co.*, 332 F.2d 439, 441 (7th Cir.) (construing Indiana's law on employment contracts), *cert. denied*, 379 U.S. 914, 85 S.Ct. 262, 13 L.Ed.2d 185 (1964); *Pennsylvania v. Dolan Co.*, 6 Ind.App. 109, 115, 32 N.E. 802, 804 (1892) ("the rule is settled that, where the contract declared upon is not all in writing, it is regarded as a parol contract"). Plaintiffs have not alleged or argued that their employment agreements with Defendant were for a definite term. There is nothing in the record establishing that Plaintiffs' employment agreements were for a definite, or determinable, length of time. In fact, if Plaintiffs' employment contracts were for a fixed term in excess of one year, then Indiana's statute of frauds would be implicated. Ind.Code § 32–2–1–1; *Ohio Table Pad Co. v. Hogan*, 424 N.E.2d 144, 145 & n. 2 (Ind.Ct.App.1981); *Whiteco Indus., Inc. v. Kopani*, 514 N.E.2d 840 (Ind.Ct.App.1987). Plaintiffs have simply alleged that their employment contracts were to be "permanent" or for so long as they did their jobs, and they contend that, in exchange for Defendant's promises of permanent employment, they accepted Zimmer's offer and relocated to Indiana from Virginia.

Under Indiana law, if a employment contract, oral or written, is for an indefinite term, or if the tenure of service cannot be determined from the terms of the contract, then such contract is terminable at the will of either party at any time. *Pepsi–Cola General Bottlers, Inc. v. Woods*, 440 N.E. 2d 696, 697 (Ind.Ct.App.1982); *Montgomery Ward & Co. v. Guignet*, 112 Ind.App. 661, 45 N.E.2d 337 (1942) (en banc); *Shaw v. S.S. Kresge Co.*, 167 Ind.App. 1, 328 N.E.2d 775 (1975); *Ryan v. J.C. Penney Co., Inc.*, 627 F.2d 836, 836–837 (7th Cir. 1980) (applying Indiana law and citing *Shaw v. S.S. Kresge Co.*, 167 Ind.App. 1, 328 N.E.2d 775); *Hostettler v. Pioneer Hi-Bred Int'l., Inc.*, 624 F.Supp. 169, 171 (S.D. Ind.1985). *See generally* Annotation, *Comment Note.—Validity and Duration of Contract Purporting to be for Permanent Employment*, 60 A.L.R.3d 226 (1974) (giving general rules). Since Plaintiffs' employment agreements were not for a definite term, they were terminable at the will of either party. In Indiana, an employer can discharge an "at-will" employee at any time for good cause, bad cause, or for no cause at all without giving rise to an action for damages. *Mead Johnson & Co. v. Oppenheimer*, 458 N.E.2d 668, 669–670 (Ind.Ct.App.1984); *Miller v. Review Bd. of Indiana Employment Sec. Div.*, 436 N.E. 2d 804, 807 (Ind.Ct.App.1982); *see also Reeder–Baker v. Lincoln Nat. Corp.*, 644 F.Supp. 983 (N.D.Ind.1986) (construing Indiana's "at-will" doctrine). *See generally* Annotation, *Modern Status of Rule that Employer May Discharge At–Will Employee for Any Reason*, 12 A.L.R.4th 544 (1982). Since Plaintiffs are "at-will" employees, to succeed on their breach of contract claims under Indiana law, they must be able to show that they gave to Defendant sufficient independent consideration (other than their promises to render services) to support Defendant's promise of "permanent employment" or to support Defendant's promise that they would not be discharged, so long as they performed their jobs adequately, except for good cause. *E.g., Ohio Table Pad v. Hogan*, 424 N.E.2d 144, 145–146 (Ind.Ct.App.1981); *Stack v.*

*Allstate Ins. Co.*, 606 F.Supp. 472, 475 & n. 1 (S.D.Ind.1985).

Plaintiffs have failed to demonstrate that they have given to Defendant the requisite independent consideration. The Indiana courts have held that moving one's household to a new location or the relinquishment of an existing job will not constitute sufficient independent consideration to support a contract of permanent employment or a contract imposing a requirement of good cause upon the employer's right to terminate an employee. *Id.* at 145–147; *Hostettler v. Pioneer Hi-Bred Int'l, Inc.,* 624 F.Supp. 169, 172–173 (S.D.Ind.1985). While it is true that the Indiana courts have held that the relinquishment of guaranteed permanent employment may be enough to constitute sufficient independent consideration, *see Romack v. Public Serv. Co.,* 499 N.E.2d 768 (Ind.Ct.App.1986) (Conover, J., dissenting), *rev'd,* 511 N.E.2d 1024 (Ind.1987) (adopting dissent's rationale), in the present case there is nothing establishing that Plaintiffs left jobs with guarantees of permanent employment.

In *Romack* and *Whiteco Industries, Inc. v. Kopani,* 514 N.E.2d 840 (Ind.Ct.App. 1987), Indiana's courts identified several factors that, together, could constitute independent consideration to support a promise of permanent employment: (1) the plaintiff must have relinquished "lifetime employment" or employment with guarantees of permanency to take the new position; (2) the defendant must have actively recruited the plaintiff to fill a position uniquely requiring a person possessing the plaintiff's precise skills and abilities; (3) the plaintiff must have advised the defendant that he would leave his existing job only if the new job with defendant offered the same permanency; and (4) the defendant must have told the plaintiff that he would have "permanent employment" if he accepted the job. "Merely surrendering an existing job in his own area of experience or expertise is insufficient." *Whiteco,* 514 N.E.2d at 846. There is nothing in the

record establishing that Defendant considered the Plaintiffs "uniquely qualified." Nor is there any evidence that Defendant actively recruited Plaintiffs by luring them away from their jobs in Virginia. Moreover, there is nothing in the record establishing that Plaintiffs' previous employment had any guarantees of permanency. Therefore, this Court is of the opinion that, based on the undisputed material facts, Defendant is entitled to summary judgment on Plaintiffs' breach of contract claims.

(2) *Promissory Estoppel*[5]

■ Under certain circumstances, Indiana's courts have recognized, as an alternative theory of recovery in employment cases, the equitable doctrine of promissory estoppel, which has been described as follows:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the [promisee] which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise."

*Eby v. York Div., Borg-Warner,* 455 N.E. 2d 623, 627 (Ind.Ct.App.1983) (quoting *Lyon Metal Prods., Inc. v. Hagerman Constr. Corp.,* 181 Ind.App. 336, 391 N.E.2d 1152, 1154 (1979)); *see Rice v. Rent-A-Center of America, Inc.,* 664 F.Supp. 423, 427 (N.D.Ind.1987); *see also* Restatement (Second) of Contracts § 90 (1981). "Promissory estoppel is appropriate in actions such as these when a party takes certain steps to his detriment in order to avail himself of promised employment." *Eby v. York Div., Borg-Warner,* 455 N.E.2d at 627; *Rice v. Rent-A-Center of America, Inc.,* 664 F.Supp. at 427. To analyze Plaintiffs' promissory estoppel arguments, this Court must determine whether Plaintiffs have established the existence of genuinely disputed issues of material fact on four elements—derived from the above formulation of the doctrine of prom-

---

**5.** Although Plaintiffs have not specifically alleged in their Complaints a promissory estoppel theory of recovery, the parties have briefed the issue as if it appeared Plaintiffs' Complaints,

and, therefore, this Court will address the issue. *See Rice v. Rent-A-Center of America, Inc.,* 664 F.Supp. 423, 424 (N.D.Ind.1987).

issory estoppel and applied to the facts of the present case: (1) whether Zimmer made a definite promise of employment to Plaintiffs which promise alone induced them to move to Indiana in reliance thereon; (2) whether Plaintiffs' move to Indiana constituted a substantial change; (3) whether Zimmer reasonably expected (or should have expected) that Plaintiffs would take such action; and (4) whether injustice can only be avoided by enforcing the promise. *See Eby v. York–Div., Borg–Warner,* 455 N.E.2d at 627 & n. 2. The first three elements are issues of fact, to which the fourth element, the equitable decision, is applied. *Id.*

This Court is of the opinion that Defendant is entitled to summary judgment on Plaintiffs' promissory estoppel claims. First, it appears to this Court that Indiana's courts have never used a promissory estoppel theory to allow a plaintiff to recover anything more than moving expenses. *Compare Eby v. York Div., Borg–Warner,* 455 N.E.2d 623 (only seeking moving expenses) *with Pepsi–Cola General Bottlers, Inc. v. Woods,* 440 N.E.2d 696 (Ind.Ct.App.1982) (refusing to allow plaintiff, who was seeking enforcement of a contract for employment for a definite term, to use promissory estoppel). Plaintiffs in the present case are not seeking moving expenses. Second, Plaintiffs have failed to allege in their Complaints anything regarding Zimmer's reasonable expectation that its representations about permanent employment would cause Plaintiffs to move to Indiana. Third, Plaintiffs have failed to present any evidence to this Court that would establish a genuine issue of fact regarding Zimmer's reasonable expectations; the facts simply have not been pleaded or put into issue by way of affidavits or depositions. Fourth, and finally, Defendant's promises of "permanent employment" are too vague to satisfy the first element's requirement of definiteness. Therefore, this Court is of the opinion that summary judgment on Defendant's behalf is appropriate on Plaintiffs' claims resting on the doctrine of promissory estoppel.

**(3) *Handbook Claims***

Plaintiffs also contend that the "bumping" policy, described in Zimmer's Handbook, became part of their employment contracts so that they were not terminable "at-will." *See generally* Annotation, *Right to Discharge Allegedly "At–Will" Employee as Affected by Employer's Promulgation of Employment Policies as to Discharge,* 33 A.L.R.4th 120 (1984). Under Indiana law, however, the existence of an employee handbook does not itself create an exception to the "terminable-at-will" rule. *Mead Johnson & Co. v. Oppenheimer,* 458 N.E.2d 668, 670–671 (Ind.Ct.App.1984); *Shaw v. S.S. Kresge Co.,* 167 Ind.App. 1, 328 N.E.2d 775 (1975); *Hostettler v. Pioneer Hi–Bred Int'l, Inc.,* 624 F.Supp. 169, 172 (S.D.Ind.1985) ("in the absence of a promise for employment for a definite period of time, the existence or nonexistence of the employee handbook is immaterial"). The Indiana courts have refused to allow terminable-at-will employees to enforce employee handbook claims because in such cases there is a lack of mutuality of obligation or consideration between the employees and the employers. *Campbell v. Eli Lilly & Co.,* 413 N.E.2d 1054, 1062–63 (Ind.Ct.App.1980), *transf. denied,* 421 N.E.2d 1099 (Ind.1981); *Shaw v. S.S. Kresge Co.,* 167 Ind.App. 1, 328 N.E.2d 775. Thus, even if this Court found that the Handbook's "bumping rights" are part of Plaintiffs' employment contracts, such promises are insufficient to restrict Zimmer's ability to discharge Plaintiffs at will at any time.

## VII. CONCLUSIONS

NOW, THEREFORE, IT IS ORDERED Defendant's Motion for Partial Summary Judgment, filed July 8, 1988, is GRANTED.

IT IS FURTHER ORDERED that Counts 2 and 3 of the Complaints in *Gries v. Zimmer,* C–C–87–576–P, and *Moran v. Zimmer,* C–C–87–577–P, are DISMISSED WITH PREJUDICE.